IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORNELIUS HILL and TRUDIE HASTINGS HILL H/W Plaintiffs | : : : : : | |
| SCHIFFAHRTSGESELLSCHAFT MS PRIWALL mbH & Co. KG and REEDEREI F. LAEISZ G.m.b.h., ROSTOCK Defendants | : : : : : : : | NO. 02-CV-2713 <br><br> JURY TRIAL DEMANDED |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

**I.**    **Argument**

The plaintiffs recently filed a response to the defendants' Motion for Summary Judgment. A review of that response demonstrates that plaintiffs' entire theory of liability is premised on speculation. First, plaintiff argues that the turnbuckle was "apparently" frozen because it was not greased. See Plaintiff's Memorandum at p. 2. During his deposition, however, Mr. Jones testified that sometimes the grease on a turnbuckle is visible and sometimes it is not. See Deposition of D. Jones, in Plaintiffs' Appendix as Exhibit 1, at p. 36. Also, Mr. Jones admitted that sometimes turnbuckles become "frozen" even if they are greased. Id. at 37. Therefore, it is sheer speculation that the turnbuckle involved in the accident was not greased and/or that it was frozen due to a lack of grease.

It is also speculation that "the lashing rod was apparently not seated properly in the container above and in the turnbuckle below." See Plaintiff's Brief at p. 2. There is simply no evidence that the turnbuckle was improperly seated, in what way it was "improperly seated" or whether this alleged problem would have been visible to anyone who looked at the lashing

852693 v.1

bar. As the Honorable William H. Yohn, Jr. pointed out in <u>Mankus v. Swan Reefer</u>, Civil Action No.: 02-3425 (E.D. Pa. 2003) (attached to Motion as Exhibit "I,") "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." <u>Id</u>. at p. 5, <u>quoting</u> <u>Robertson v. Allied Signal, Inc.</u>, 914 F.2d 360, 382 n. 12 (3d Cir. 1990). Therefore, since plaintiffs' entire case is premised on speculation as to why the lashing bar fell, the case should be dismissed.

However, even if the speculative nature of plaintiffs' theories regarding the cause of the accident are overlooked, plaintiff cannot avoid summary judgment by arguing that the alleged hazard "should have been observed by a competent, careful ship's officer but not by a longshoremen" because the longshoremen was "more interested in checking the numbers on the container than looking to see if the rod was under tension and likely to pop out." See Plaintiff's Memorandum at p. 12. **As a matter of law**, if there was an observable problem involving the connection of the lashing bar to the container, that condition should have been noticed by the expert stevedore that was hired to unload the containers. Therefore, as a matter of law, plaintiff cannot establish a cause of action.

In their Brief, the plaintiffs suggest that the ship's equipment was deficient in two ways. First, they argue that the lashing gear was rusty and/or not greased and, secondly, they argue that the lashing bar was "improper seated." It is true that the lashing gear was part of the ship's equipment. However, there is no evidence of a defect in the lashing gear since it was not bent, broken or otherwise physically deficient. Plaintiff argues that it was "rusty," but this is a normal, routinely-encountered condition for metal appliances on the deck of a vessel, which does not make the equipment defective. Moreover, there is no question that the "rusty" condition of the turnbuckle was obvious and known to the stevedore. In fact, Mr. Jones clearly observed the condition of the lashing gear. <u>See</u> Deposition of D. Jones, in Plaintiffs' Appendix as Exhibit 1,

852693 v.1

2

at pp. 23-24.  Therefore, the vessel did not breach the "turnover duty" as it relates to the "ship and its equipment" because, as a matter of law, a vessel owner does not have a duty to eliminate conditions that are obvious or known to the stevedore.  See e.g. Kirsch v. Plovidba, 971 F.2d 1026, 1029-30 (3d cir. 1992).

Second, the plaintiffs also cannot establish a cause of action based on the argument that the lashing gear must have been seated improperly.  As the defendants pointed out in their initial brief, a problem involving the attachment of the lashing gear to a container is not a defect in the ships' equipment, but a defect in the manner in which the cargo was stowed by the loading stevedore.  Throughout their Brief, the plaintiffs argue that this condition was not observable by Mr. Jones, but it should have been observed by a member of the ship's crew.  This argument, however, ignores the fact that, as a matter of law, the stevedore that has a **non-delegable** duty to protect the longshoremen from cargo hazards.

The stevedore in this case was hired to unload the containers and that work involved the disconnection of the lashing gear.  Therefore, the vessel owner had a right to assume that the stevedore would perform that work competently; i.e., the vessel owner had a right to expect that the stevedore would conduct an inspection of the lashing gear to make sure it was safe before hitting it with a wrench.  Howlett, 512 U.S. 92, 104 (1994).  As the Court stated in Morris v. Conpagnie Des Cargeurs, 832 F.2d 67 (5th Cir. 1987) cert. denied 485 U.S. 1022 (1988), if an alleged hazard is "obvious, it should have been as apparent to the stevedore as to the shipowner.  It is contradictory to suggest that a careful shipowner should discover an apparent defect but a careful stevedore may miss it with impunity." Id. at pp. 69-70.

In their Brief, the plaintiffs draw a comparison between this case and the decision in Serbin v. Bora Corp., Ltd., 96 F.3d 66 (3d Cir. 1996), where the court held that it was a jury question as to whether an obstructed hinge block was an obvious hazard.  This case, however, is

852693 v.1

categorically different because, in Serbin, the vessel retained control over the hinge block during the discharge operation. Therefore, the Court of Appeals analyzed the case under the active operations duty, not the turnover duty.  In this case, the plaintiffs have acknowledged that it is the turnover duty, not the active operations duty, that is applicable since the stevedore was hired to disconnect the lashing gear.  Thus, as a matter of law,  it was the stevedore's obligation to identify and cope with hazards presented by the lashing gear.

The Serbin decision was based on the holding in Davis v. Portline Transporrtes Maritime International, 16 F.3d 532 (3d Cir. 1994), in which the Court of Appeals clearly distinguished the concept of "obviousness" when the active operations duty is at issue from cases, like this one, where the alleged hazard involves a cargo condition created by a loading stevedore:

> [D]uring stevedoring operations, the vessel **properly relies on the experience and expertise of the stevedore to load or unload cargo safely, for this experience and expertise is the precise reason why a vessel hires the stevedore, and hence it must not supervise the stevedore.  Cf. Scindia, 451 U.S. at 171-72, 101 S.Ct. at 1624.  The vessel, then, may generally assume that the stevedore is an expert and safety-conscious, correspondingly reducing the vessel's duties toward longshore workers.**  Should the stevedore fail to live up to its responsibility to protect its workers during stevedoring operations, the Act's compensation scheme forces it to pay the price.
>
> When, however, the hazard occurs due to the vessel's active operations, as is plausibly the case here, it no longer is proper for the vessel to defer to the stevedore's expertise in handling cargo.  The problem of apportioning responsibility between the vessel and stevedore by manipulating the vessel's standard of care to account for both entities disappears, because the vessel is in such events responsible for the injury, and liability, if any, should attach to it according to its comparative fault.  It patently is not the stevedore's responsibility to protect the worker against the vessel's active operations.  That, quite simply, is the vessel's duty.  Congress was not ambiguous when it repeatedly pronounced that a vessel's liability should be premised on its own negligence as garnered from land-based third party tort doctrines.  In short, **unlike with**

> **the turnover duty which generally applies to hidden defects in cargo areas**, the vessel cannot rely on the stevedore's expertise to protect its workers from vessel's active operations. This much we believe the Court recognized in *Scindia,* and the corresponding duty enumerated (but did not develop) for these situations is the active operations duty.

Davis, 16 F.3d at 548 (emphasis added).

In this passage, the Davis panel confirmed that the vessel ordinarily does not have a **duty** of care to remedy open and obvious conditions involving the cargo because it can rely on the expert stevedore to identify and deal with those conditions. Id. The Davis court held that if a longshoreman is injured by the active negligence of the vessel (such as a crewmember hosing down a deck on a cold night), in an area outside the scope of the stevedore's expertise, then the active operations duty applies and the open and obvious nature of the condition becomes a question of comparative fault. Therefore, in Davis, the Court of Appeals did not weaken or qualify the vessel owner's ability to rely on the stevedore to identify and address cargo hazards.

Furthermore, in Howlett, which was issued after Davis, the United States Supreme Court once again addressed the shipowner/stevedore relationship when a condition of the cargo stow is involved. Throughout its opinion, the Supreme Court stressed that the stevedore is presumed to be an expert in cargo handling and cargo operations. Thus, the Court recognized that the stevedore "is in the best position to avoid accidents during cargo operations and that the shipowner can rely on the stevedore's warranty to perform competently." Howlett, 512 U.S. at 101 (citations omitted). Furthermore, the Court stated that **"[t]he stevedore's obligations in this regard may not be diminished by transferring them to the vessel."** Id. (emphasis added).

In this case, the active operations duty is not at issue. The stevedore was hired to unload the containers and, as part of that work, the stevedore was responsible for disengaging the

lashing gear. Therefore, the vessel did not have a duty to warn the stevedore about conditions involving the lashing gear that should have been apparent to a reasonably competent stevedore. Furthermore, the fact that the vessel's crew conducted inspections of the lashing gear to ensure that the containers did not shift during the voyage does not shift responsibility to the vessel owner. The "non-delegable" to protect the longshoremen from cargo hazards duty remained with the stevedore. Howlett, 512 U.S. at 104.

In Derr v. Kawasaki Kisen K.K., 835 F.2d 490 (3d Cir. 1987), the plaintiff made the same argument, when he argued that the vessel could be held liable for an accident caused by cargo conditions because the vessel's crew observed the cargo loading operation. However, the Court of Appeals rejected this argument:

> Even if it were true that a vessel customarily observes the loading of cargo, understandable in light of its potential liability for certain damage to cargo, . . . we agree with the district courts that such observation cannot be used to reimpose the general duty to supervise the stevedore. Nor can such observation be vaulted into the type of active involvement and control that would trigger the ship's liability.

Id. at 494 (citation omitted). As the plaintiffs point out in their Memorandum, the holding in Derr was affirmed by the Supreme Court in Howlett. Furthermore, in Howlett, the Supreme Court noted that even if a vessel owner were required to conduct inspections of cargo at the time of loading, it would not be liable for an accident that occurred in a discharge port due to an improper stow "[b]ecause there can be no recovery under §5(b) for a vessel's failure to warn of dangers that would be apparent to a longshoreman of reasonable competence." Howlett, 512 U.S. at 104.

This case is also categorically different than the facts in the Mankus v. Swan Reefer I, Civil Action No. 02-3425 (E.D. Pa 2003) (attached to Motion Exhibit "I"). In Mankus, it was alleged that the electrical cord involved in the accident was defectively tied by a member of the ship's crew and the longshoremen were unaware that the cord was defectively tied.

852693 v.1

6

Therefore, the crew allegedly created a dangerous condition that was not open and obvious. For that reason, the <u>Serbin</u> Court concluded that the distinction between cargo and the ship's equipment was not applicable under the unique facts of that case. <u>Id</u>. at p. 8, n. 7. In this case, however, the plaintiffs readily admit that if the lashing rod was "improperly seated," that condition was created by the loading stevedore. <u>See</u> Plaintiff's Memorandum p. 7. Therefore, the ruling in <u>Howlett</u> is applicable and plaintiff cannot establish a cause of action.

As their final argument, the plaintiffs argue that "fault on the part of the vessel owner precludes the grant of summary judgment." <u>See</u> Plaintiff's Memorandum at p. 19. They base this argument on a sentence contained in the <u>Serbin</u> decision, but their interpretation of the <u>Serbin</u> holding is a clear misstatement of the law. The law in this area clearly states that a vessel owner does not have a duty to turn over an absolutely safe vessel. The law recognizes that "certain dangers that may be hazardous to unskilled persons need not be remedied if an expert and experienced stevedore could safely work around them." <u>Kirsch</u>, 971 F.2d at 1029-1030. Furthermore, in <u>Serbin</u>, the Court of Appeals recognized that the "obviousness inquiry" is very different when the turnover duty is involved rather than the active operations duty.

In <u>Serbin</u>, because there was a question of fact as to which duty applied, the Court analyzed the case under the active operations duty; therefore, consistent with its holding in <u>Davis</u>, the Court of Appeals concluded that the open and obvious nature of the hazard created a question of comparative negligence. The Court of Appeals specifically noted, however, that **"obviousness [is] a bar to liability under the turnover duty."** <u>Id.</u> at 75.

In the case, there is no question that the "turnover duty," is controlling, not the "active operations duty." Furthermore, there is no dispute that the "rusty" condition of the lashing gear was known to the stevedore. It is also clear, as a matter of law, that if there was an observable problem involving the connection of the lashing bar to the container, that problem

852693 v.1

should have been apparent to a reasonably competent stevedore. Therefore, even if the plaintiffs could show that the vessel had actual knowledge of the alleged problem (a burden they cannot satisfy), the vessel did not have a **duty** to provide a warning, because if the condition was observable during an inspection by a member of the crew, that condition was open and obvious as a matter of law.

### III.    CONCLUSION

Based on the foregoing, plaintiffs cannot establish a breach of duty by the vessel owner. Therefore, defendants respectfully request that this Court grant their Motion and enter summary judgment in their favor.

                      Respectfully submitted,

                      RAWLE & HENDERSON LLP

                      By:_____
                            Carl D. Buchholz, III, Esquire
                            Michael P. Zipfel, Esquire
                            Charles W. McCammon, Esquire
                            Attorneys for Defendants
                            The Widener Building
                            One South Penn Square
                            Philadelphia, PA  19107
                            Phone: (215) 575-4200.

DATED:  August 8, 2003

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORNELIUS HILL<br>    and<br>TRUDIE HASTINGS HILL H/W<br>            Plaintiffs<br>SCHIFFAHRTSGESELLSCHAFT MS<br>PRIWALL mbH & Co. KG<br>    and<br>REEDEREI F. LAEISZ G.m.b.h., ROSTOCK<br>            Defendants | NO. 02-CV-2713<br><br><br>JURY TRIAL DEMANDED |

### CERTIFICATE OF SERVICE

    I do hereby certify that the foregoing Reply Brief in Support of Motion for Summary Judgment was served by First Class Mail, postage prepaid, to the following counsel of record:

> E. Alfred Smith, Esquire
> 1333 Race Street, 2nd Floor
> Philadelphia, PA 19107
> Attorney for Plaintiff

 

                              Carl D. Buchholz, III, Esquire
                              Michael P. Zipfel, Esquire

On this 8th day of August, 2003.