IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORNELIUS HILL, et al. | : | CIVIL ACTION |
| | : | |
| V. | : | |
| | : | |
| NSB NIEDERELBE | : | 02-2713 |
| SCHIFFAHRTSGES.MBH & CO., et al. | : | |

**MEMORANDUM**

**Baylson, J.**                                                                                                    **December 30, 2003**

In their complaint, Plaintiffs Cornelius and Trudie Hastings Hill seek recovery under the 1972 Amendments to the Longshoremen's and Harbor Worker's Compensation Act ("LHWCA"), 33 U.S.C. § 905(b) for injuries suffered by Cornelius Hill in the course of his employment as a longshoreman. Presently before this Court is a Motion for Summary Judgment by Defendants Schiffahrtsgesellschaft MS Priwall mbH & Co. KG ("Priwall") and Reederei F. Laeisz G.m.b.h., Rostock ("Laeisz").

**I.      Background**

The following facts are undisputed. Priwall and Laeisz are the owner and operator, respectively, of the merchant vessel M/V Sea Panther. During the relevant time, Defendants chartered the M/V Sea Panther to Crowley American Transport ("Crowley"). On August 25, 2000, the M/V Sea Panther was docked at a pier and terminal operated by Delaware River Stevedores ("DRS") in the Port of Philadelphia. Containers on the vessel were to be unloaded by employees of DRS, including Plaintiff Cornelius Hill ("Hill") and his co-employee Dwight Jones ("Jones") who were both employed by DRS as longshoremen. Part of the discharge operation was the unlashing of the containers stored on the vessel, so that the containers could be lifted off of the vessel with a crane.

Under the International Longshoreman's Association agreement with the Port of Philadelphia, only longshoremen are allowed to unlash and discharge containers at the DRS facility. Before discharge operations began, the longshoremen's supervisor was given an opportunity to board the vessel and make an inspection. After that inspection took place, Hill and Jones boarded the vessel to unlash containers from the aft of the vessel. Hill and Jones unlashed one bay of containers without incident and then proceeded to a second bay, where they inspected the area and did not see any problems. Jones proceeded to unlash a container by loosening one of the turnbuckles. Containers are secured to the deck by metal poles (called lashing rods) that are connected to the top of a container at one end, and to the vessel, with a mechanism called a turnbuckle, at the other end. To unlash a container, the longshoreman would unscrew the turnbuckle, loosen the connection with the lashing rod, disengage the rod from the top corner of the container and lower the rod to the vessel's deck. When a turnbuckle is difficult to turn (referred to as "frozen"), the longshoreman would hit the turnbuckle with a wrench to loosen it.

In this case, Jones looked at the turnbuckle and rod and did not see any defects, but the turnbuckle was tight and appeared rusty and ungreased, so Jones struck the turnbuckle with a wrench. When Jones struck the turnbuckle, the top of the lashing rod came out of the fitting at the top of the container and fell and struck Hill, causing injuries. Neither Hill nor Jones saw any problem with the equipment, and an inspection by the Captain and stevedore supervisor after the accident found no defective or broken equipment.

Plaintiff Hill and his wife filed a complaint against Defendants Priwall and Laeisz, as well as the charterers of the vessel, who have now been terminated as parties in this case, on May

7, 2002 and a subsequent amended complaint on August 8, 2002. Defendants filed their Motion for Summary Judgment on July 7, 2003, Plaintiffs filed their response on July 29, 2003, and Defendants filed their reply on August 8, 2003.

## II.     Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as the case involves a cause of action arising under federal law, and also under 28 U.S.C. § 1332, as Plaintiffs are residents of the Commonwealth of Pennsylvania, Defendants are corporations incorporated in the Republic of Germany, and the amount in controversy exceeds $75,000.

### III.    The Turnover Duty

The parties agree that the only issue in this case is whether Defendants breached their "turnover duty" under the LHWCA. Defendants argue that there is no evidence of a defect in the vessel or its equipment, no evidence of the shipowner's knowledge of any defect by the shipowner, and no legal duty for the vessel owner to warn the longshoremen of a defect, therefore Plaintiffs have no cause of action under the "turnover duty." Plaintiffs argue that there are material issues of fact as to whether a defect existed and whether the vessel should have known of the defect and, thus, summary judgment is inappropriate.

In Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 101 S. Ct. 1614, 68 L. Ed. 2d 1 (1981) and Howlett v. Birkdale Shipping Co., 512 U.S. 92, 114 S. Ct. 2057, 129 L. Ed. 2d 78 (1994), the Supreme Court explained that a shipowner owes three duties to longshoremen under the LHWCA: the "turnover duty," relating to the condition of a ship upon the commencement of stevedoring operations and including a corollary duty to warn; the "active operations duty" providing that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain in the "active control" of the shipowner; and the "duty to


intervene," concerning the shipowner's obligations regarding cargo operations under the principal control of the independent stevedore. Howlett, 512 U.S. at 98 (citing Scindia, 451 U.S. at 167-78). See this Court's decision in Jackson v. Egyptian Navigation Co., 222 F.Supp. 2d 700 (E.D.Pa. 2002).

The turnover duty is explained as follows:

> A vessel must 'exercise ordinary care under the circumstances' to turn over the ship and its equipment and appliances 'in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care' to carry on cargo operations 'with reasonable safety to persons and property.'

Howlett, 512 U.S. at 98 (quoting Federal Marine Terminals, Inc. v. Burnside Shipping Co., 394 U.S. 404, 416-17 n.18, 89 S. Ct. 1144, 22 L. Ed. 2d 371 (1969)).  In addition, the turnover duty includes a duty to warn:

> A corollary to the turnover duty requires the vessel to warn the stevedore 'of any hazards on the ship or with respect to its equipment,' so long as the hazards 'are known to the vessel or should be known to it in the exercise of reasonable care,' and 'would likely be encountered by the stevedore[,] and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.'

Id. at 98-99 (quoting Marine Terminals, 394 U.S. at 416 n.18).

    A.    **Area of Operations**

The turnover duty relies on a distinction between cargo or stowage operations on the vessel and the ship's equipment or gear. Relying on the intention of Congress to place liability for injuries on the party who controls the area where the injuries occurred, the Supreme Court has held,

> The shipowner thus has a duty with respect to the condition of the ship's gear,

>equipment, tools and work space to be used in the stevedoring operations; and if he fails at least to warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman.

Scindia, 451 U.S. at 167.  Accordingly, "the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." Id. at 172 (emphasis added).  In addition, "the shipowner has no duty to supervise or inspect cargo loaded or unloaded by stevedores and therefore may not be held liable for injuries arising out of the stevedore's failure to perform his job properly." Derr v. Kawasaki Kisen K.K., 835 F.2d 490, 493 (3d Cir. 1987).  However, in a narrow set of circumstances, defects in cargo operations incur liability for the shipowner.

>The vessel's turnover duty to warn of latent defects in the cargo stow and cargo area is a narrow one.  The duty attaches only to latent hazards, defined as hazards that are not known to the stevedore and that would be neither obvious to nor anticipated by a skilled stevedore in the competent performance of his work . . .   The duty encompasses only those hazards that are known to the vessel or should be known to it in the exercise of reasonable care.

Howlett, 512 U.S. at 105.  Thus, a shipowner has a duty of reasonable care and a duty to warn as to the ship and its equipment, and as to latent defects in the cargo area, but no general duty as to the cargo operations.

This distinction under the turnover duty has been defined in a number of cases.  A defective winch being used by a stevedore to unload cargo is part of the ship's gear.  Scindia, 451 U.S. at 159.  However, a coil that was part of the stowage being unloaded was part of the cargo operations.  Derr, 835 F.2d at 496.  In addition, plastic provided by the ship and laid under the cargo was stowage, but may have supported a finding of the shipowner's actual knowledge, thus

triggering the duty to warn of latent defects. Howlett, 512 U.S. at 105-6. An oil slick of unknown origin in the cargo hatch was within cargo operations and not latent. Kirsch v. Plovidba, 971 F.2d 1026, 1033 (3d Cir. 1992). Electrical cords attached to storage containers that had been improperly tied by the ship's crew are part of the cargo, but could be latent hazards. Mankus v. Swan Reefer I, 2003 U.S. Dist. LEXIS 10263, *16-17 (E.D.Pa. 2003).

      B.      **Obviousness of Defect**

Liability for hazards in the cargo area under the turnover duty hinges on whether a particular defect is obvious to a reasonable stevedore. As discussed above, a shipowner does not incur liability where a defect would be obvious to the reasonable stevedore in the course of his duties. However, there are exceptions to this general rule. A shipowner may be negligent for an obvious hazard "because custom, positive law or contract instructs the shipowner to rectify the particular hazard, regardless of its obviousness." Kirsch, 971 F.2d at 1031. For example, where "a shipowner should know that longshore workers frequently confront rather than avoid a type of obvious hazard . . . the shipowner may be negligent in not eliminating the hazard, although the plaintiff's recovery may be reduced according to his or her comparative fault." Id.

The Third Circuit has clearly held that whether a defect is obvious is generally a question for the jury, and not appropriately decided on a motion for summary judgment. Serbin v. Bora Corp. Ltd., 96 F.3d 66, 73 (3d Cir. 1996); Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532, 540 (3d Cir. 1994). Whether a hazard is one that longshoremen avoid is also a question for the jury. Kirsch, 971 F.2d at 1030, n6; Mankus, 2003 U.S. Dist. LEXIS at *16.

**IV.**      **Application to the Facts**

To establish a cause of action under the turnover duty, Plaintiff must show: (1) the

accident was caused by a defect in the vessel or its equipment or a latent defect in the cargo area; (2) the vessel owner knew about the hazard or should have discovered it before the vessel was turned over to the stevedore; (3) the hazard was one likely to be encountered by the stevedore in the course of its operations; and (4) the hazard was one that Plaintiff's employer, the stevedore, did not know about and that would not be obvious to or anticipated by a reasonably competent stevedore. Kirsch at 1029-30. The parties dispute whether there is an issue of material fact as to all but the third element. It is undisputed that any hazard in the lashing gear would be a hazard that would likely be encountered by the stevedore in the course of its operations, as the longshoremen's responsibilities explicitly included removing the lashing gear. The parties' contentions regarding each of the remaining elements are addressed below.

### A.     Existence of Defect

Defendants argue that there is no evidence of any defect in the lashing gear, or of the improper seating of that gear on the cargo container. Plaintiffs argue that the fact that Mr. Jones did not see any grease on the turnbuckle and that it appeared rusted suggests a defect (Dwight Jones Dep. at 22). In response, Defendants point out that Mr. Jones admitted that sometimes grease is not visible on a turnbuckle (Jones Dep. at 36). In addition, Captain Schuessler, in his deposition, claimed that the turnbuckle and lashing rod are galvanized steel and, thus, are not susceptible to rust (Wiclef Schuessler Dep. at 81). However, Plaintiff Cornelius Hill, in his deposition, said that turnbuckles do rust (Cornelius Hill Dep. at 122-3) and Defendants, in their reply, state that rusting is a normal occurrence (Defendants' Reply Brief at 2). Thus, there is an issue of fact as to whether the turnbuckle could have been rusted and whether it actually was rusted. Both of these issues are material to whether the lashing gear was defective.

Plaintiffs argue that the fact that the lashing rod immediately popped off the container is itself evidence that the rod was improperly seated, as lashing rods typically need to be unscrewed before they can be removed form the top of the containers. All of the parties deposed stated that they did not know of another instance of a lashing rod popping off a container without being unscrewed (Hill Dep. at 117, Jones Dep. at 37, Schuessler Dep. at 167, Vagn Ejsing Dep. at 31-32, Joseph Ahlstrom Aff. at 4). Mr. Ejsing, who was the stevedore superintendent, stated that it is highly unusual for a lashing rod to fall in this way and, thus, there must have been a defect (Ejsing Dep. at 31-32). In addition, Plaintiffs' expert Mr. Ahlstrom stated that, based on his maritime experience, a lashing rod popping off a container in this way must have been defective. Defendants are unable to present facts showing that the lashing rod was free of defects, due to the fact that the lashing rod itself was not preserved and the accident report from the scene was not compiled based on interviews with Hill or Jones (Jones Dep. at 33-4, Vagn Ejsing Dep. at 19). Thus, the evidence presented raises an issue of fact as to whether the lashing rod was improperly seated on the container.

In addition, the facts presented by both parties also raise issues as to partial liability. As suggested in Kirsch, discussed above, a shipowner's negligence in not eliminating a hazard may be offset by the comparative fault of another. Kirsch, 971 F.2d at 1031. In this case, there is at least some suggestion that Mr. Jones, who struck the turnbuckle with his wrench before it popped off the container, and Mr. Hill, who was Mr. Jones's unlashing partner, may share some liability for the injury. While Mr. Jones and Mr. Hill state that it is normal to hit a turnbuckle to pry it loose (Jones Dep. at 24, Jones Aff. at ¶ 7, Hill Dep. at 51-52), Mr. Ejsing states that it is not something longshoremen are supposed to do (Ejsing Dep. at 20). However, Mr. Ejsing states it

was normal practice for longshoremen to hit turnbuckles to loosen them (Ejsing Dep. at 53). Captain Schuessler suggests that this is not proper practice (Schuessler Dep. at 167-8) and Mr. Ejsing's post-accident report suggests that Mr. Hill and Mr. Jones could have avoided the accident by loosening turnbuckles together as opposed to separately (Ejsing Dep. at 23). Thus, the facts presented raise a material issue of fact as to how liability should be apportioned.

Accordingly, the facts presented to this Court suggest that material issues of fact exist as to whether the turnbuckle was defective due to rust, whether the lashing rod was defective due to improper seating, and whether Mr. Hill or Mr. Jones share some liability for the accident. Thus, as to the existence of a defect in the lashing gear, summary judgment is not appropriate.

**B.    Location of Defect**

Defendants also argue that, even if there were evidence of a defect in the lashing gear, the defect would be in the cargo stow rather than the ship's equipment and, therefore, liability would fall on the stevedore and not the vessel owner under established law. Defendants argue that, even if the lashing gear is part of the ship's equipment, the use of that gear as connected to the storage containers makes it part of the ship's stowage. Defendants also argue that, the crew's inspections of the lashing gear during the voyage preceding this incident do not shift the duty for cargo stowage to the vessel owner. Plaintiffs argue the opposite: that the lashing gear is part of the ship's equipment, regardless of its use. The evidence presented certainly raises an issue of fact as to whether the lashing gear was the ship's equipment, as all of the lashing gear was provided by the shipowner (David Burke Dep. at 36-7).

Of the cases cited above regarding the distinction between a ship's equipment and stowage, the facts in this case most closely resemble those in Scindia, where the Court found that

a defective winch being used to unload cargo was part of the ship's equipment. Scindia, 451 U.S. at 175. Here, as in Scindia, the item in question is an apparatus that is part of the ship, but is used by longshoremen in the course of unloading cargo. As in Scindia, at the time of the accident, the equipment was being handled by longshoremen and not members of the ship's crew. Id. at 156. Thus, as in Scindia, the relevant inquiry is whether the shipowner can be charged with actual or constructive knowledge of the defect. In addition, even if the lashing gear were to be found to be part of the ship's stowage, rather than the ship's equipment, Defendants would still have a duty to warn of latent defects. Howlett, 512 U.S. at 105.

Accordingly, Defendants' argument that they are free from liability because the alleged defect is part of the ship's cargo is not valid, as there is, at minimum, a genuine issue of material fact as to whether the alleged defect fell within the Defendants' turnover duty, as to either the ship's equipment or a latent cargo hazard.

### C. Knowledge of Hazard

As to the shipowner's knowledge of any defect, whether in the ship's equipment or cargo stowage, Plaintiffs must show there is a material issue of fact as to whether the Defendants knew or should have known of the defect in the exercise of reasonable care. Defendants argue that there is no evidence of actual knowledge by either Defendant. Plaintiffs raise no facts to contradict this assertion. As to whether Defendants should have known of the alleged defect in the lashing gear, Defendants rely on their argument that the lashing gear is part of the ship's cargo and, thus, within the purview of the stevedore and, therefore, the shipowner's exercise of reasonable care would not extend to the lashings. Plaintiffs argue that, not only was the lashing gear part of the ship's equipment, but the ship's crew also conducted regular inspections of the

lashing gear during the vessel's voyage to Philadelphia and, thus, should have known of its improper seating (Ejsing Dep. at 55-6, Burke Dep. at 44, Schuessler Dep. at 171). In addition, the ship's crew was charged in the Time Charter with responsibility for maintaining the lashing gear and making sure the vessel was properly loaded (Burke Dep. at 31, Schuessler Dep. at 177-8).

Although Defendants argue that a duty of care did not exist because of the location of the alleged defect, as discussed above, Plaintiffs have sustained their burden of showing an issue of fact as to whether the lashing gear was part of the ship's equipment. Although Defendants had no general duty to inspect the cargo stowage or the cargo operations, the fact that Defendants had duties based both in custom and in contract to inspect and maintain the lashing gear suggests that either the lashing gear was part of the ship's equipment, thus invoking Defendants' duty of care, or that the lashing gear was part of the stowage and Defendants should have known of a latent defect in the exercise of reasonable care. Plaintiffs' evidence that the ship's crew regularly inspected the lashing gear and that the maintenance of the lashing gear was the vessel's responsibility raise genuine issues of material fact as to whether Defendants should have known of the alleged defect and remedied it, even if it was part of the cargo stowage.

### D. Obviousness of Hazard

If a defect existed in the cargo stowage and the shipowner should have known of it, Defendants would have a duty to warn of that hazard, if that hazard was not known to the longshoremen and would not be obvious to them. Defendants argue that if the hazard should have been observed by the vessel's crew, then the hazard must have been obvious to the longshoremen and, thus, the vessel owner cannot be held liable. In the instant situation,

Defendants argue that, if they can be charged with constructive knowledge, then the stevedore must be saddled with obviousness. This misinterprets the duties of a shipowner. It is possible, based on the facts presented, that the shipowner should have detected a defect in the lashing gear in the course of inspecting and maintaining the ship's stowage, per its customary duties. It is also possible that a defect in the seating of the lashing rod would not have been obvious to the longshoremen, in the reasonable exercise of their unloading duty. This could be due to the nature of the unlashing process, to the relative time spent with the gear, or to other differences between the role of the crew and the role of the longshoremen. The Court cannot come to a conclusion on this issue as a matter of law.

In addition, obviousness is not an absolute bar to liability. Kirsch, 971 F.2d at 1031. Where a shipowner has a duty based in custom or contract to remedy a hazard, the shipowner may be held negligent, regardless of obviousness. Id. In this case, there is an issue of fact as to whether Defendants had a duty based on custom to remedy hazards in the lashing gear. The facts presented suggest that the vessel's crew was customarily charged with maintaining the lashing gear (Schuessler Dep. at 171, Burke Dep. at 44). In addition, the Time Charter provides for the maintenance of lashing gear by the ship's crew (Burke Dep. at 31), which raises an issue of fact as to whether Defendants had a duty based in contract to remedy any defects in the lashing gear, regardless of obviousness. Finally, based on the unlashing customs described in the depositions, Defendants may appropriately be charged with knowing that longshoremen frequently confront obvious defects in lashing gear (such as hitting a frozen turnbuckle with a wrench) rather than avoid them, thus triggering Defendants' duty to remedy any such defects.

Finally, as discussed above, obviousness or anticipation by a longshoreman is an issue

that is generally not appropriate for summary judgment. Thus, summary judgment on the issues of obviousness, anticipation, and avoidance is not appropriate at this time.

**IV. Conclusion**

Defendants have not met their burden on summary judgment. Genuine issues of material fact exist as to (1) whether the turnbuckle and lashing rod were defective, (2) whether the lashing gear was part of the ship's equipment or cargo stowage, (3) whether the Defendants should have known of said defect, (4) whether Plaintiff or Mr. Jones shares some liability for the injury, (5) whether a defect in the lashing gear was obvious to the Plaintiffs, and (6) whether, despite the obviousness of a defect, Defendants had a duty to remedy that hazard. Therefore, Defendants' Motion for Summary Judgment will be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORNELIUS HILL, et al. | : | CIVIL ACTION |
| | : | |
| V. | : | |
| | : | |
| NSB NIEDERELBE | : | 02-2713 |
| SCHIFFAHRTSGES.MBH & CO., et al. | : | |

## **ORDER**

And now, this       day of December, 2003, it is ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 50) is DENIED. A settlement conference shall be scheduled with Magistrate Judge Linda K. Caracappa as promptly as possible.

BY THE COURT:

_____
Michael M. Baylson, J.

O:\CIVIL\02-2713 Hill v. NSB\02-2713 Hill SJ Memorandum Opinion.wpd