## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORNELIUS HILL<br>and<br>TRUDIE HASTINGS HILL H/W<br>       Plaintiffs<br><br>v.<br><br>SCHIFFAHRTSGESELLSCHAFT MS<br>PRIWALL mbH & Co. KG<br>and<br>REEDEREI F. LAEISZ G.m.b.h., ROSTOCK<br>       Defendants | NO. 02-CV-2713<br><br>JURY TRIAL DEMANDED |

## **ORDER**

AND NOW, this _____ day of _____, 2004, upon consideration of the Motion for Reconsideration filed by defendants Schiffahrtsgesellschaft MS Priwall mbH & Co. KG and Reederei F. Laeisz G.m.b.h., Rostock and any response thereto, it is hereby ORDERED that the Motion is GRANTED and Summary Judgment is hereby ENTERED in favor of defendants Schiffahrtsgesellschaft MS Priwall mbH & Co. KG and Reederei F. Laeisz G.m.b.h., Rostock.

                                                            BY THE COURT:


                                                            _____
                                                                                        J.

918894 v.1

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORNELIUS HILL<br>    and<br>TRUDIE HASTINGS HILL H/W<br>            Plaintiffs<br><br>    v.<br><br>SCHIFFAHRTSGESELLSCHAFT MS<br>PRIWALL mbH & Co. KG<br>    and<br>REEDEREI F. LAEISZ G.m.b.h., ROSTOCK<br>            Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br><br><br><br><br>NO. 02-CV-2713<br><br><br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' MOTION FOR RECONSIDERATION OF
<u>ORDER DENYING MOTION FOR SUMMARY JUDGMENT</u>**

Defendants Schiffahrtsgesellschaft MS Priwall mbH & Co. KG ("Priwall") and Reederei F. Laeisz G.m.b.h., Rostock ("Laeisz"), by their attorneys, Rawle & Henderson, LLP, hereby move this Court to reconsider the Memorandum and Order entered on December 30, 2003 and enter summary judgment in their favor. Alternatively, defendants respectfully request that this Honorable Court amend its Order pursuant to 28 U.S.C. §1292(b), to indicate that an immediate appeal "may materially advance the ultimate termination of the litigation" and, in support thereof, moving defendants assert the following:

1.    On December 30, 2003, this Court enter a Memorandum and Order denying defendants' Motion for Summary Judgment. <u>See</u> Memorandum and Order attached hereto as Exhibit "A."

2.    The defendants believe that the Court's decision should be reconsidered because: (a) the Court imposed an improper burden of proof on the defendants; (b) second, it is

918894 v.1

respectfully submitted that the Court applied an improper standard when analyzing whether the alleged cargo hazard was "latent;" and (c) third, it is respectfully submitted that the Court's decision constitutes an unprecedented and unwarranted extension of the turnover duty, which is inconsistent with the Supreme Court's decision in <u>Howlett</u>, since it allows a longshoreman to pursue a negligence action even if the accident was caused by a cargo hazard that would be obvious to a reasonably competent stevedore.

3. In its Memorandum, this Court imposed on the defendants a duty to disprove the existence of the defect that **caused** the accident, which is improper. It is the plaintiffs' burden to prove that there was a defect in the ship or its equipment, or that the vessel owner breached a duty of care pertaining to the cargo, that caused their injuries. The plaintiffs have not presented evidence to support such a conclusion. Therefore, the defendants respectfully request that this Court reconsider its decision and enter summary judgment in their favor.

4. The Court concluded that a vessel owner can be charged with constructive knowledge of a cargo hazard that crewmembers "should have" detected during an inspection of the cargo, yet the Court concluded that the same condition would not be obvious to a reasonably competent stevedore. It is respectfully submitted that this conclusion is directly at odds with the Supreme Court's definition of a "latent" cargo hazard because, under controlling precedent, any cargo hazard that is observable during an inspection by the vessel's crew is a condition that would be discovered by a reasonably competent stevedore.

5. In its decision, this Court suggested that obviousness is not an "absolute bar" to liability under the turnover duty when the alleged hazard involves a condition of the cargo. The defendants respectfully submit that this conclusion constitutes an unprecedented and unwarranted extension of the turnover duty, since it allows a longshoreman to pursue a

negligence action for injuries caused by cargo hazards that would be obvious to a reasonably competent stevedore.

6. Defendant believes the holding of this Court is directly at odds with the opinion issued by the United States Supreme Court in Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92 (1994) and various decisions issued by the Third Circuit Court of Appeals, which hold that, when analyzing the duty of care owed by a vessel owner, "the cargo stow is separate and distinct from other aspects of the ship." Howlett, 512 U.S. at 104.

7. Based on the controlling caselaw that defines a vessel's owners duties pertaining to cargo hazards, defendants respectfully request that this Court reconsider its Order and enter summary judgment in its favor. Alternatively, defendants request that this Court amend its Order to indicate that it involves controlling questions of law "as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b).

8. If this case proceeds to trial based on the analysis set forth in the Court's December 30 Memorandum, an appeal will be necessary since the Court's analysis is based on an improper interpretation of a "latent" cargo hazard and it creates an unprecedented and unwarranted extension of the "turnover duty." Therefore, defendants believe that an immediate appeal will add more certainty to the litigation and, ultimately, will reduce the length of the litigation.

WHEREFORE, defendants Priwall and Laeisz respectfully request that this Court reconsider its Order and enter summary judgment in their favor. Alternatively, defendants

918894 v.1

request that this Court amends its Order to indicate that an immediate appeal is warranted in accordance with 28 U.S.C. §1291(b).

                                              Respectfully submitted,

                                              RAWLE & HENDERSON LLP

                                              By:_____
                                                  Carl D. Buchholz, III, Esquire
                                                  Michael P. Zipfel, Esquire
                                                  Attorneys for Defendants
                                                  The Widener Building
                                                  One South Penn Square
                                                  Philadelphia, PA  19107
                                                  Phone: (215) 575-4200.

DATED:  January 9, 2004

918894 v.1

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORNELIUS HILL<br>and<br>TRUDIE HASTINGS HILL H/W<br>    Plaintiffs<br><br>v.<br><br>SCHIFFAHRTSGESELLSCHAFT MS<br>PRIWALL mbH & Co. KG<br>and<br>REEDEREI F. LAEISZ G.m.b.h., ROSTOCK<br>    Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br><br><br><br><br>NO. 02-CV-2713<br><br><br><br>JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR RECONSIDERATION**

**I.    STATEMENT OF FACTS**

On December 30, 2003, this Court entered a Memorandum and Order denying defendants' Motion for Summary Judgment. The defendants respectfully submit that the Court's opinion should be reconsidered for several reasons: (a) first, the Court imposed an improper burden of proof upon the defendants; (b) second, it is respectfully submitted that the Court applied an improper standard when analyzing whether the alleged hazard cargo was "latent;" and (c) third, it is respectfully submitted that the Court's decision constitutes an unprecedented and unwarranted extension of the turnover duty, which is directly at odds with the Supreme Court's holding in Scindia, since it allows a longshoreman to pursue a negligence action even if the accident was caused by a cargo hazard that would be obvious to a reasonably competent stevedore.

918894 v.1

### A.   The Court Imposed An Improper Burden Of Proof On The Defendants

On page 9 of its Memorandum, the Court stated that it was denying the defendants' Motion for Summary Judgment, in part, because "Defendants are unable to present facts showing that the lashing rod was free of defects, due to the fact that the lashing rod itself was not preserved and the accident report from the scene was not compiled based on interviews with Hill or Jones." See Memorandum, Exhibit "A," at p. 9. However, as this Court pointed out at the beginning of its Memorandum:

> Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, **"the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial."** Fed.R.Civ.P. 56(e).

See Memorandum, Exhibit "A," at p. 3.

In this case, it is the plaintiffs' burden to prove the existence of a defect in the ship or its equipment, which **caused** the accident in question. The plaintiffs have asserted that there were two defects that contributed to the accident: the turnbuckle was allegedly "frozen" because it was not greased and the lashing rod was allegedly not seated properly where it connected to the container. The Court concluded that there is a jury question as to whether or not the turnbuckle was rusted or frozen, making it hard to turn. However, according to plaintiffs' own theory of liability, the fact that the turnbuckle was "frozen" (i.e. difficult to turn) did not cause the accident. According to plaintiff's version of the facts, turnbuckles were frequently "frozen" (see Memorandum, Exhibit "A" at p. 13) and the plaintiffs are not aware of any other

time when a lashing pole fell under these circumstances. (Id. at p. 9). Therefore, the condition that allegedly caused the accident was the alleged improper seating of the lashing rod where it connected to the container.

The plaintiffs in this case have failed to present any evidence to support a conclusion that this improper seating was caused by any mechanical defect involving the lashing bar or any other mechanical defect involving the ship's equipment. Therefore, the plaintiffs have not proven the existence of any defect in the ship or its equipment that **caused** the accident. Instead, if there was a problem involving the connection of the lashing bar to the container, that problem arose from the manner in which the containers were stowed on the vessel by the loading stevedore or the problem developed at some point during the voyage or when the vessel arrived in the Philadelphia area. The important point is that, under plaintiffs' own theory of liability, the condition that caused the accident was a problem involving the condition of the cargo –not a defect in the ship's equipment.

In its Memorandum, this Court suggested that the defendants somehow failed to preserve the lashing rod. However, there is no basis to suggest that the defendants destroyed any evidence or otherwise prevented plaintiffs' counsel from investigating the cause of the accident. Therefore, there is no basis to shift the burden of proof to the defendants regarding the existence of any alleged defect.

In its Memorandum, this Court imposed on the defendants a duty to disprove the existence of a defect that **caused** the accident, which is improper. It is the plaintiffs' burden to prove that a defect in the ship or its equipment caused their injuries or that the vessel owner breached a duty of care pertaining to the cargo. The plaintiffs have not presented evidence to

support such a conclusion. Therefore, the defendants respectfully request that this Court reconsider its decision and enter summary judgment in their favor.

      **B.**    **The Court Applied An Improper Standard When Analyzing Whether The Alleged Hazard Was "Latent"**

On page 13 of its Memorandum, this Court concluded that a vessel owner can be charged with constructive knowledge of a cargo hazard that "should have" been observed during an inspection by the vessel's crew, yet the same condition would not be obvious to a reasonably competent stevedore. Specifically, this Court concluded that "it is possible . . . . that the shipowner should have detected a defect in the lashing gear in the course of inspecting and maintaining the ship's stowage," but "it is also possible that a defect in the seating of the lashing rod would not have been obvious to the longshoreman . . . due to the nature of the unlashing process, to the relative time spent with the gear . . . ." See Memorandum, Exhibit "A," at p. 13. This conclusion is directly at odds with the Supreme Court's holding in Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92 (1994).

In Howlett, the Supreme Court specifically addressed a vessel owner's duty to warn when a condition of the cargo is involved. The Supreme Court held that a vessel owner does not have a duty to warn the stevedore about potential cargo hazards unless the hazard is latent, "defined as hazards that are not known to the stevedore and that would be neither obvious to nor anticipated by a skilled stevedore in the competent performance of its work." Id. at 105. Therefore, the standard is not whether a condition would be obvious or observable to any casual observer or even to a member of the vessel's crew; instead, a condition is "latent" only if it would not be discovered by a competent stevedore (i.e. the company hired for its expertise in cargo operations) that conducts appropriate inspections before doing its work. If the condition

would be discovered by a reasonably competent stevedore, the vessel owner <u>does not have a duty</u> to provide a warning. Secondly, a duty to warn does not arise unless the hazard is "known to the vessel or should be known to it in the exercise of reasonable care." <u>Id.</u> at 98-99.

In almost every case, it could be argued that it is a jury question as to whether the alleged hazard "would have" been obvious or anticipated by a reasonably competent stevedore and whether the vessel's crew "should have" known of the cargo hazard and, at first glance, it might appear that the Supreme Court adopted this type of constructive knowledge standard. In <u>Howlett</u>, however, the Supreme Court made it clear that it was not establishing a standard that hinges on who had a better opportunity to do an inspection. Instead, the Court held that a vessel owner **the does not <u>have a duty</u>** to warn of cargo conditions unless there are hidden dangers about which the crew has knowledge. Furthermore, the Supreme Court specifically held that <u>any</u> cargo hazard that is observable or recognizable during an inspection by a member of the vessel's crew is, as a matter of law, a condition that would be discovered by a reasonably competent stevedore:

> We next consider <u>Howlett's</u> view that a vessel must make reasonable inspections after the completion of stevedoring operations to discover hazards in the stow. There is good reason to doubt that adopting this rule would have much practical import. **Any hazard uncovered by a shipowner who inspects a completed stow would, as a matter of course, be discovered in a subsequent port by a stevedore "reasonably competent in the performance of his work."** *Id.*, at 167. As discussed above, shipowners engage a stevedore for its expertise in cargo operations and are entitled to assume that a competent stevedore will be able to identify and cope with defects in the stow. See *id.*, at 171; *Hugev v. Dampskikaktieselskabet Int'l.*, 170 F.Supp. at 609-610. **Once loading operations are complete, it follows that any dangers arising from an improper stow would be "at least as**

5

> **apparent to the [stevedore] as to the [shipowner]."** *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S., at 366 (Stewart, J., dissenting). Because there can be no recovery under § 6(_) for a vessel's failure to warn of dangers that would be apparent to a longshoreman of reasonable competence, S*cindia Steam, supra*, at 167, nothing would be accomplished by imposing a duty upon vessels to inspect the stow upon completion of cargo operations.

Howlett v. Birkdale Shipping Co., 512 U.S. 92 (1994).

Based on the Howlett decision, a vessel owner does not have a duty to warn the stevedore about potential cargo hazards that are discoverable during an inspection that is conducted after loading operations are completed. The vessel owner only has a duty to warn if it created or observed the creation of a cargo hazard that later becomes hidden from view. For example, in Howlett, the Supreme Court determined that there was a jury question as to whether the vessel owner in that case had actual knowledge that plastic sheets had been placed under the cargo because, during the loading operation, a ship's officer observed that plastic was used as a separation material. Also, there was evidence that the plastic sheets were hidden from the discharging stevedore because the cocoa beans were loaded on top of the plastic. Therefore, in Howlett, the vessel owner arguably observed the creation of the hazardous condition, which was hidden from the discharging stevedore. However, the Supreme Court made it clear that any hazard that would be observable or discoverable during an inspection that takes place after the cargo is loaded is not a "latent" condition because the discharging stevedore, the expert in cargo operations, can be relied upon to identify and cope with that type of hazard.

In this case, the plaintiffs have not presented any evidence to support a conclusion that the defendants observed the creation of a cargo hazard that later became hidden. Instead, in its decision, this Court said it is "possible" due to the parties' respective roles, that the crew

6

"should have detected a defect" during an inspection, yet it is also "possible" that the same condition would not be obvious during an inspection by the stevedore. This type of speculation should not be sufficient to defeat a motion for summary motion. Furthermore, this conclusion is directly at odds with the Howlett decision.

In its Memorandum, the Court mentions a couple of times that "the Time Charter provides for the maintenance of lashing gear by the ship's crew." See Memorandum at p. 13. However, the existence of the charter party is not a basis to alter the standard established in Howlett. As the Court pointed out in Mankus v. Swan Reefer I, Civil Action No. 02-3425 (E.D.PA. 2003) (attached to original Motion as Exhibit "J"), a time charter between a vessel owner and a charterer does not create a duty on the vessel for the benefit of longshore workers. Id. at pp. 18-21. Furthermore, in Derr v. Kawasaki Kisen K.K., 835 F.2d 490 (3d Cir. 1987), the Court of Appeals held that making observations to ensure the safety of the cargo does not reimpose a duty on a shipowner to supervise or inspect cargo conditions for the safety of longshoremen in subsequent ports. Id. at 494.

Based on the foregoing, the defendants respectfully submit that the Court's December 30 Memorandum is directly at odds with the Supreme Court's definition of a "latent" hazard because, under controlling law, any cargo hazard that is observable during an inspection by the vessel's crew is a condition that should be discovered by a reasonably competent stevedore. In this case, plaintiff's entire case is premised on the argument that the alleged improper seating of the lashing bar should have been discovered during an inspection. Therefore, as a matter of law, the condition was not "latent" and the vessel owner did not have a duty to warn. See also Morris v. Compagnie Maritime Des Carguers, 832 F.2d 67, 69-70 (5th Cir. 1987), cert. denied, 455 U.S. 1022 (1988) ("If obvious, it should have been as apparent to

the stevedore as to the shipowner. It is contradictory to suggest that a careful shipowner should discover an apparent defect but that a careful stevedore may miss it with impunity.") Accordingly, the defendants request that this Court reconsider its decision and enter summary judgment in their favor.

### C. The Court's Decision Improperly Expands a Vessel Owner's Duty of Care Relating to Cargo Conditions

In its Memorandum, this Court concluded that the "obviousness is not an absolute bar to liability" when an alleged cargo hazard is involved. It is respectfully submitted that this holding constitutes an unprecedented and unwarranted extension of a vessel owner's turnover duty.

In support of its holding, the Court cites the decision in <u>Kirsch v. Plovidba</u>, 971 F.2d 1026 (3d Cir. 1992). In <u>Kirsch</u>, the Court of Appeals held that obviousness is not an absolute bar to liability when a longshoreman is injured by a hazard involving the ship or its equipment. However, the holding in <u>Kirsch</u> does not apply when a cargo hazard is at issue.

In <u>Kirsch</u>, the stevedore-employer was hired to load cargo containers aboard a vessel. When the plaintiff and the other longshoremen entered the No. 4 hold it "was empty, but they discovered a thin coating of oil covering a substantial portion of the deck of the hold." <u>Kirsch</u>, 971 F.2d at 1027. For the purposes of the defendant's summary judgment motion, the Court accepted that "members of the crew were or should have been aware of the oil [and]... the presence of the oil was the shipowner's responsibility," i.e. a member of the vessel's crew may have created the condition. <u>Id</u>. at 1029. Therefore, the issue before the Court of Appeals was whether "a shipowner breaches its basic duty to provide safe working conditions by turning over a ship with an obvious hazard." <u>Id</u>. at 1029.

> The panel in <u>Kirsch</u> began its analysis by setting forth the following discussion:
>
> A shipowner will not ordinarily be liable to a longshore worker injured by an obvious hazard because the shipowner's duty is only to provide a workplace where skilled longshore workers can operate safely. The basic theme of the Supreme Court's decision in <u>Scindia</u> is that "[a]s a general matter, the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards." 451 U.S. at 170, 101 S.Ct. at 1623. <u>Scindia</u> "plac[es] the primary burden on the stevedore for avoiding injuries caused by obvious hazards." <u>Id</u>. at 180, 101 S.Ct. at 1628 (Powell concurring). . . .
>
> Thus, where a danger is obvious but easily avoidable, the shipowner will not be liable for negligence.

<u>Id</u>. at 1030. The Court went on to hold that, under certain circumstances, a shipowner may be negligent for failing to eliminate an obvious hazard. In doing so, however, the <u>Kirsch</u> panel drew a distinction between hazards involving the ship and its equipment and hazards involving the cargo.

In <u>Kirsch</u>, the Court expressed concern that absolving a shipowner of liability for an open and obvious condition "is similar to the result under the outmoded common law tort doctrines of contributory negligence and assumption of risk, doctrines that Congress rejected in 1972." <u>Kirsch</u>, 971 F.2d at 1031 n.6. The panel expressed some dissatisfaction with the Restatement view which "justif[ies] the no-recovery result. . . as a duty question." <u>Id</u>. The Panel noted, however, that this "result is easier to accept when one recognizes that we deal here with a liability triangle that also includes the stevedore, **upon whose expertise in cargo operations, the Supreme Court has emphasized, the shipowner may ordinarily rely.**" <u>Id</u>. (emphasis added). Furthermore, the <u>Kirsch</u> panel specifically noted that the duty to warn about cargo conditions was <u>not</u> an issue in that case. <u>Id.</u> at 1031 n. 7.

9

As this discussion demonstrates, in Kirsch, the Court concluded that if there is an obvious hazard aboard a vessel that falls within the scope of the stevedore's area of expertise (i.e. cargo operations), the open and obvious nature of the hazard does **not** raise the issue of comparative fault. Instead, the vessel owner **does not have a duty** to remedy or warn about the condition because it can rely on the stevedore to avoid or remedy the hazard or stop working until the problem is resolved. In Davis v. Portline Transportes Maritime Internacional, 16 F. 3d 532 (1994), when discussing a vessel's turnover duty, the Court of Appeal reaffirmed that when cargo operations are involved, the vessel "may generally assume that the stevedore is an expert and safety–conscious, correspondingly reducing the vessel's duties toward longshore workers." Id. at 549. Furthermore, in Howlett, the Supreme Court specifically held that a vessel owner does not have a duty to warn of hazards involving the cargo unless the condition is "latent." If the condition is not latent, a duty to warn does not arise.

In Mankus, the District Court suggested in a footnote that, under the facts of that particular case, obviousness may not be a complete bar to liability even though the accident was caused by a cargo hazard because the vessel's crew created the alleged hazard. However, that part of the Mankus decision is not relevant here because, in this case, it has not been alleged, and there is certainly no evidence, that the vessel's crew created the alleged cargo hazard involving the seating of the lashing bar. Therefore, the conclusion that obviousness is not an absolute bar to recovery in this case is directly at odds with the Supreme Court's holdings in Scindia and Howlett and every decision issued by the Third Circuit Court of Appeals that discusses cargo hazards.

In this case, the cargo hazard that allegedly caused plaintiff's accident was the alleged improper seating of the lashing pole. There is no evidence that the vessel had actual

10

knowledge of that condition, so plaintiffs' case is premised on the argument that the condition would have been discovered during an inspection. However, under controlling law, any cargo hazard that would be apparent during an inspection by the vessel's crew would be discovered by a reasonably competent stevedore (i.e. the condition was not "latent"). Therefore, the vessel owner did not have a duty to warn.

## II.   CONCLUSION

WHEREFORE, defendants Priwall and Laeisz respectfully request that this Court reconsider its Order and enter summary judgment in their favor. Alternatively, defendants request that this Court amends its Order to indicate that an immediate appeal is warranted in accordance with 28 U.S.C. §1291(b).

>                               Respectfully submitted,
>
>                               RAWLE & HENDERSON LLP
>
>
>                               By:_____
>                                   Carl D. Buchholz, III, Esquire
>                                   Michael P. Zipfel, Esquire
>                                   Attorneys for Defendants
>                                   The Widener Building
>                                   One South Penn Square
>                                   Philadelphia, PA 19107
>                                   215-575-4200

Dated: January 9, 2004

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORNELIUS HILL <br> and <br> TRUDIE HASTINGS HILL H/W <br> Plaintiffs <br><br> v. <br><br> SCHIFFAHRTSGESELLSCHAFT MS PRIWALL mbH & Co. KG <br> and <br> REEDEREI F. LAEISZ G.m.b.h., ROSTOCK <br> Defendants | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | NO. 02-CV-2713 <br><br><br><br> JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

I do hereby certify that the foregoing Motion for Reconsideration was served by First Class Mail, postage prepaid, to the following counsel of record:

        E. Alfred Smith, Esquire
        1333 Race Street, 2nd Floor
        Philadelphia, PA 19107
        Attorney for Plaintiff

        _____
        Carl D. Buchholz, III, Esquire
        Michael P. Zipfel, Esquire

On this 9th day of January, 2004.

918894 v.1