UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORNELIUS HILL : | |
| and : | |
| TRUDIE HASTINGS HILL H/W : | |
| Plaintiffs : | |
| v. : | |
| NN.B.NIEDERELBE : | No. 02-CV-2713 |
| SCHIFFAHRTSGES.mbH & CO. : | |
| and : | |
| F. LAEISZ Schiffahrtsges.mbH : | |
| & Co. : | |
| and : | |
| CROWLEY AMERICAN TRANSPORT : | **JURY TRIAL DEMANDED** |
| Defendants : | |

**BRIEF IN SUPPORT OF MOTION FOR NEW TRIAL**

**FACTS**

Plaintiff is a longshoreman who was working aboard the MV/SEA PANTHER when he was injured on August 24, 2000. Plaintiff was leaning down attempting to unlash a container when he was struck from behind by a falling lashing bar.

Plaintiff's breaster, Dwight Jones, was attempting to unlash a nearby container. The turnbuckle was frozen, so Jones hit it with a wrench supplied by the shipowner. This is standard procedure on the Philadelphia waterfront.. The turnbuckle came loose, and the lashing bar it was holding popped out and flew through the air and struck Plaintiff.

The lashing bar had been put on by a stevedore in a foreign country. After it was put on, one of the mates inspected it. The chief mate and the other mates inspected all of the lashings -- about one thousand (1,000) of them -- several times while the vessel was at sea. They inspected them again before the longshoremen began work. The ship's captain admitted under oath that

the officers may have missed something with the lashing bar that unexpectedly came loose and flew several feet in the air and struck Plaintiff.

At trial, Plaintiff and Jones testified on the liability issue. Plaintiff also presented a master mariner, Captain Joseph Ahlstrom, as an expert.

At trial, defendants read various portions of the deposition testimony of the vessel's Captain, Captain Wiclef Schuessler and also presented Van Ejsing, the stevedoring superintendent at the time of the injury and stevedoring Expert Walter Curran. Curran testified to opinions that were not in his report. Plaintiff objected on the basis of surprise, but the objection was overruled.

Plaintiffs believe that the trial was fatally flawed, to their severe prejudice, in four respects.

    1.    The Court permitted the defense expert, Walter Curran, to testify to opinions which were not in his report and for which Plaintiffs were not prepared. Plaintiffs therefore believe their cross-examination of Curran was ineffective. Since Curran presented virtually the entire defense, his untested opinions were devastating to Plaintiffs.

    2.    The Court's charge to the jury was prejudicially incorrect in three respects:

        a.    The Court charged on superseding cause, and this is inapplicable in LHWCA cases, and it must have confused the jury and inappropriately enabled them to return a verdict for defendants.

        b.    The Court failed to charge on res ipsa loquitur. This charge explains circumstantial evidence together with the inferences the jury can draw from it, and is completely consistent with all the cases which hold that a longshoreman must prove negligence in order to

recover.

  c. The Court charged that the vessel owner would not be liable if the condition which caused the accident was open and obvious and failed to explain that the stevedoring company need only take practical measures to avoid or eliminate an open and obvious condition that it encounters.

## **DISCUSSION**

  1. The Court erred in permitting defendant's expert to testify to opinions not disclosed in his report because Plaintiffs' counsel was surprised and had no time to prepare for cross examination, and the opinions were the heart of the defense.

  F.R. Civ. P. 26(a)(2)(B) reads in relevant part as follows:

  Except as otherwise stipulated or directed by the Court, this disclosure shall, with respect to a witness who is retained or specifically employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions;...

  The 1993 Amendments Notes say:

  This paragraph imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.

Under F.R. Cir. P.26(e) a party is under a continuing obligation to supplement its discovery responses.

F.R. Civ. P.37(c)(1) appears to call for mandatory sanctions since it reads as follows:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Nevertheless, the Third Circuit has read Rule 37 as follows: {T}he imposition of sanctions for abuse of discovery under Fed. R. Civ. P. 37 is a matter within the discretion of the trial court. Newman v. GHS Osteopathic, Inc. 60 F.3d 153, 156 (3rd Cir., 1995) citing Orjias v. Stevenson 31 F. 3rd 995 (10th Cir. 1994) cert. den. U.S. (1994). In Newman the Third Circuit said a district court should consider prejudice or surprise to the opposing party, ability of the party to cure prejudice, the likelihood of disruption and the moving party's bad faith or unwillingness to comply. Newman, supra at 156. In Newman the district court permitted a witness to be heard after hearing arguments from both sides and concluding that the failure to name the witnesses was harmless since the opposing party knew of the witnesses well before trial.

In Paoli II, 35 F.3d 717 (3rd Cir. 1994), cert den. 513 U.S. 1190 (1995) exclusion of a physician's testimony was held to be an abuse of discretion because the failure to timely file was only a "slight" deviation and admitting the witness would cause only slight prejudice to the opposing party.

In In re TMI Litigation, 193 F.3d 613 (3rd Cir. 1999) exclusion of expert

4

testimony from consideration in a Summary Judgment proceeding was upheld because the expert reports were filed long after the expiration of a court order compelling their production and counsel had repeatedly done that during the ten years of discovery.

In this case, counsel objected on the basis that the opinion of the expert was not in his report and counsel therefore rightly claimed surprise. (Curran, 4). The Court overruled the objection without hearing argument. On cross-examination Curran admitted that the testimony he gave was not in his report. (Curran, 18). A copy of Curran's report of April 25, 2003 is attached as Exhibit 1, and it says nothing about impossibility.

Furthermore, Curran's impossibility opinion was based on a turnbuckle configuration that was not in evidence in the case. (Curran, 14, 15). Even so, Curran rendered the same opinion as applicable to a turnbuckle configuration which was in evidence. (Curran 15, 16, 41, 42).

Finally, Curran's testimony was based in part on four photographs, but only two of them were in the courtroom. (Curran, 13). The other two he had left in his office. (Curran, 13). Curran testified that all four photographs only showed about one half of the turnbuckle. (Curran, 13). The photographs were not particularly relevant to the opinion expressed in Curran's report, but they were very significant so far as his impossibility theory was concerned. Had counsel been on notice of the impossibility opinion prior to trial, he would have obtained all four of the photographs before trial. This would have shown whether Curran was lying when he testified that the two photographs not in the courtroom did not show whether there were no hooks on the tops of the turnbuckles. (Curran 13-16).

5

Curran's testimony was the only testimony offered by defendant to rebut Jones' account of the accident. Plaintiffs were therefore irretrievably prejudiced by not being able to prepare an effective, in depth cross-examination on the merits of the impossibility opinion due to a lack of preparation caused by the surprise.

2.      The Court's charge on superseding cause was contrary to the negligence principles developed under the LHWCA and injected confusion into the case which created confusion in the jury's minds.

The Courts have gone to extraordinary lengths to draw the lines of responsibility between shipowner and stevedore in light of the relationship between the two and the circumstances under which the longshoremen do their work. See Kirsch v. Plovidba, 971 F.2d 1026 (3rd Cir. 1992); Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532 (3rd Cir. 1994), and Serbin v. Bora Corp., Ltd. 96 F.3d 66 (3rd Cir. 1996).

It is repeatedly stressed in the cases that a shipowner can be held liable only for its own negligence, but it can be liable even if fault on the part of the stevedore contributed to cause the injury because there can be more than one proximate cause for an injury. Serbin, supra at 75. If the stevedore's fault contributed to the injury, the shipowner is nevertheless liable for the entire verdict even if its fault was a small amount compared to that of the stevedore. Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256 (1979). The focus for the jury, therefore, is whether the shipowner was at fault to any degree and whether that fault was one of the proximate causes of the injury. The only remaining focus is whether plaintiff was comparatively negligent, and it is axiomatic that a plaintiff cannot be charged with the negligence of a fellow employee.

Instead of charging that negligence on the part of the stevedore would,

nevertheless, make the shipowner liable if its negligence was also a proximate cause of the injury, the Court told the jury that it could exonerate the shipowner if it found that Jones was negligent and that his negligence superseded that of the shipowner. It therefore elevated Jones to a status equal to a shipowner or a stevedore, yet his fault, if any, should only have been attributed to the stevedore.

Pennsylvania Suggested Standard Jury Instructions - Civil (August 12, 1996) states as follows:

3.28 (Civ), Intervening or superseding cause.

No instruction should be given.

### SUBCOMMITTEE NOTE

"Intervening" and "superseding" caused have been some of the most confusing legal concepts for jurors to grasp. Because substantial contributing factor remains the test of causation as stated in Pa.SSJI (Civ) 3.25 and any additional charge on superseding or intervening cause will only serve to confuse the jury, the Subcommittee recommends that no additional charge should be given. Further, since it is the exclusive function of the court to declare the existence or non-existence of rules which restrict the actor's responsibility short of making him liable for harm which his negligent conduct is a substantial factor in bringing about, and to determine the circumstances to which such rules are applicable under *Restatement (Second) of Torts,* §453, instructions placing the responsibility for these decisions with the jury may well be reversible. *Brown v. Tinneny,* 280 Pa. Super. 512, 421 A.2d 839 (1980). (But Cf. *Estate of Flickinger v. Ritsky,* 452 Pa. 69 at 75.)

The elements set forth by the Court in its charge could have been satisfied if the

jury believed Captain Schuessler's testimony and that of Stevedore Expert Curran. The charge completely exonerates the vessel for all of its negligence, if any, even if that negligence was a proximate cause of the injury. This is completely contrary to the legislative history of the 1972 Amendments and all of the cases interpreting them, especially <u>Edmonds</u>, supra. A shipowner can be exonerated only if it was not negligent in any way or if its negligence was not one of the proximate causes of the accident.

The jury was thus given an incorrect, as well as confusing, statement of the law, and this may well explain its verdict.

3. The Court failed to charge on <u>res ipsa loquitur</u> so the jury was not adequately instructed on circumstantial evidence.

The Court was hesitant about applying <u>res ipsa loquitur</u> because the Supreme Court has stressed the need for proof of negligence in order for a longshoreman to prevail. See <u>Scindia Steam Nav. Co., Ltd. v. De Los Santos</u>, 451 U.S. 156 (1981) and <u>Howlett v. Birkdale Shipping Co., S.A.</u>, 512 U.S. 92 (1994). The same theme is repeated frequently in the most significant Third Circuit cases. See <u>Kirsch v. Plovidba</u>, 971 F.2d 1026 (3rd Cir. 1992). <u>Davis v. Portline Transportes Maritime Internacional</u>, 16 F.3d 532 (3rd Cir. 1994) and <u>Serbin v. Bora Corp., Ltd.</u>, 96 F.3d 66 (3rd Cir. 1996).

The reason for the emphasis on proof of negligence is simply that the 1972 Amendments changed the basis for recovery from unseaworthiness to negligence. Unseaworthiness was a species of liability without fault, and a vessel was unseaworthy if any part of the vessel, crew or equipment was not reasonably fit for the purpose intended. <u>Seas Shipping Co v. Sieracki</u>, 328 U.S. 25 (1946). It did not matter how long the unseaworthy

condition existed. Mitchell v. Trawler Racer, Inc., 362 U.S. 539 (1960).

A Plaintiff's burden of proof of unseaworthiness is easily met. Although the rubric was that a shipowner need not provide an accident-free ship, in most cases proof of the accident sufficed to show that the vessel was unseaworthy.

The 1972 Amendments, by holding the vessel owner liable only for negligence but not unseaworthiness, thereby greatly enlarged a longshoreman's burden of proof from what it was pre-1972. Now the burden depends upon which of the vessel owner's duties is alleged to have been breached, and this burden is much more substantial than that of proving unseaworthiness.

Nevertheless, the 1972 Amendments in no way altered the basic concept of negligence itself. They simply left to the courts the job of shaping the contours of the concept to the realities of the shipowner-stevedore-longshoreman situation, and that's what the courts are doing.

Res ipsa loquitur is not in the least injurious to any concept of negligence; it is a negligence rule which helps the jury to understand that they can find negligence even in the absence of direct evidence, which is the situation in most cases. The point submitted by plaintiffs was taken from the Restatement of Torts, Second, §328D. However, a suggested res ipsa loquitur charge for longshoremen's cases is also found in O'Malley, Grenig and Lee, Federal Jury Practice and Instructions (5th Ed. West 2001) § 156.252.

The doctrine is applicable in FELA cases and in Jones Act cases where negligence must be shown but the causation standard is much lighter. See Jesionowski v. Boston & M.R.R., 329 U.S. 452 (1947) and Johnson v. United States, 333 U.S. 46 (1948). In Johnson, Mr. Justice

Douglas explained that res ipsa loquitur deals only with permissible inferences from unexplained events. In Johnson it was applied to a fellow seaman's conduct.

In this case, Plaintiff proved that the turnbuckle was frozen and therefore beyond the capability of a longshoreman to unloosen it by using only his own strength. Plaintiffs also proved that the lashing bar and turnbuckle were put on at a foreign port after which they should have been inspected by a ship's officer, and they should have been inspected daily thereafter by ship's officers who also should have inspected them before the longshoremen began work. It was impossible for the Plaintiffs to provide direct evidence of how the turnbuckle in issue was frozen. Jones could only testify to what he saw, and that was rust in the threads of the turnbuckle and a lack of grease.

Plaintiffs satisfied all of the elements necessary to have res ipsa loquitur apply, and the instruction could have helped the jury to understand that they were entitled to draw an inference of negligence from the evidence presented. The failure to so charge left the jury to speculate on whether Plaintiffs had actually proven negligence, and this could easily explain the jury's verdict.

It has been held to be reversible error for a court to refuse to charge res ipsa loquitur when requested to do so and the evidence justifies it. Olsen v. States Lines, 378 F.2d 217 (9th Cir. 1967).

3. The court's charge or obviousness was incorrect because it failed to tell the jury that a stevedore need only take practical measures to avoid or eliminate an obvious hazard.

The Court instructed the jury that the shipowner would not be liable for an obvious danger unless "custom, positive law or contract instructs the shipowner to rectify the

particular hazard."

Judge Becker's explanation of the "positive law, custom and contract" formulation means it applies to regulations or a custom between shipowner and the stevedore or within the port or industry. See Kirsch, supra at 1031. The only evidence relevant to this was Jones' and plaintiff's testimony that longshoremen always hit frozen turnbuckles with a wrench, and this was corroborated by Ejsing. To the contrary was defendant's expert, Curran, who testified that he had never seen a longshoreman hit a turnbuckle with a wrench and that it was improper to do so. The ship's Master, Captain Schuessler, testified that he was not aware of frozen turnbuckles because there had never been any on his ship.

From the testimony it is clear that even if the jury were to believe that it was a custom in Philadelphia for longshoremen to hit frozen turnbuckles with a wrench, that would not have been enough to implicate the vessel because Captain Schuessler said frozen turnbuckles never existed on his ship.

The jury was thus left to consider only the Court's introductory expression that a shipowner is not liable for the consequences of an open and obvious condition.

Judge Becker went to great lengths to explain that an open and obvious condition does not automatically exonerate a vessel owner whose fault created the condition, <u>Kirsch</u>, supra at 1029-1031. In fact, he said that the courts "have rejected a bright-line rule that a shipowner can <u>never</u> be liable for injuries caused by obvious hazards." (Italics in original) <u>Kirsch, supra at 1030</u>.

Judge Becker also explained as follows:

As a general matter, courts have discussed the "open and obvious hazard" issue as a question of the shipowner's duty, rather than under the rubric of comparative negligence. The difference is crucial, for a finding of no duty means that the plaintiff cannot recover at all, whereas a finding of comparative negligence only reduces the plaintiff's recovery by a percentage. The difference is also troubling, because the no-liability result under the "duty" analysis is similar to the result under the outmoded common law tort doctrine of contributory negligence and assumption of risk, doctrines that Congress rejected in 1972. (citation omitted) Kirsch, 971 F.2d at 1031 n. 6.

Judge Becker's analysis repeatedly referred to the stevedore's obligation only to take "practical" measures to avoid or eliminate an open and obvious hazard it encounters during the stevedoring operation. Kirsch, 971 F. 2d at 1030. Accordingly, the Court's charge that a shipowner is not liable if the injury-producing condition is open and obvious is fundamentally incorrect and inconsistent with Judge Becker's opinion in Kirsch.

As requested by Plaintiffs, the Court should have instructed the jury that the stevedore need only take practical measures to avoid or eliminate open and obvious dangers. By failing to explain a shipowner's liability as qualified in these terms, the Court left the jury with the impression it could exonerate the shipowner upon a mere finding that the hazard was open and obvious.

Accordingly, Plaintiffs were irretrievable prejudiced.

## **CONCLUSION**

      For the foregoing reasons, plaintiffs submit that the verdict of the jury should be set aside and a new trial should be granted.

                               Respectfully submitted,

                               E. ALFRED SMITH & ASSOCIATES

                               _____

                               E. Alfred Smith
                               Attorney for Plaintiffs
                               Cornelius Hill and Trudie
                               Hastings Hill