**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CORNELIUS HILL | : | |
| and | : | |
| TRUDIE HASTINGS HILL H/W | : | |
| Plaintiffs | : | |
| SCHIFFAHRTSGESELLSCHAFT MS | : | NO. 02-CV-2713 |
| PRIWALL mbH & Co. KG | : | |
| and | : | |
| REEDEREI F. LAEISZ G.m.b.h., ROSTOCK | : | |
| Defendants | : | JURY TRIAL DEMANDED |

**DEFENDANTS' BRIEF IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR A NEW TRIAL**

Defendants Schiffahrtsgesellschaft MS Priwall mbH & Co. KG ("Priwall") and Reederei

F. Laeisz G.m.b.h., Rostock ("Laeisz"), by and through their attorneys, Rawle & Henderson,

respectfully submit the following Brief in opposition to plaintiffs' Motion for a New Trial.

**I.    INTRODUCTION**

Plaintiffs filed this personal injury lawsuit against defendants, the owner and operator of

the M/V SEA PANTHER, to recover damages they allegedly sustained when plaintiff Cornelius

Hill was injured while working as a longshoreman aboard the vessel.  Specifically, plaintiffs

alleged that Mr. Hill was injured while he and a fellow longshoreman, Dwight Jones, were

working together to unlash containers of cargo that were secured to the vessel.  The containers

were secured with lashing gear that consisted of a steel lashing rod, and turnbuckles used to

tighten the rods, that secured the containers to the deck of the vessel.  When Dwight Jones

banged one of the turnbuckles with a wrench in an attempt to loosen it, plaintiffs alleged, a

lashing rod came free, flew through the air, and struck Mr. Hill in the back of the head.  Plaintiffs

alleged that this accident occurred as a result of defendants' breach of their duty of care under

the Longshore and Harbor Workers Compensation Act ("LHWCA").

This matter was tried before a jury, with Your Honor presiding, from April 5 through April 8, 2004. On April 8, 2004, the jury returned a verdict in favor of defendants and against plaintiffs. According to the Jury Verdict Form, a copy of which is attached hereto as Exhibit "A," the jury found that neither defendant was negligent.

In their Motion for a New Trial, plaintiffs contend that the Court erred as follows:

1.  In allowing defense liability expert, Walter Curran, to testified to opinions that plaintiffs allege were beyond the opinions set forth in his report.

2.  In charging the jury on "superceding cause."

3.  In failing to charge the jury on "*res ipsa loquitur.*"

4.  In charging to jury on a vessel owner's duty as to "open and obvious" conditions in a manner that plaintiffs contend is inconsistent with the law.

As discussed more fully below, the Court did not err in admitting the testimony of defense liability expert Walter Curran, and did not err in any of its instructions to the jury. Accordingly, defendants respectfully request that the Court deny plaintiffs' Motion for a New Trial.

## II.    LEGAL ARGUMENT

### A.    Standard for Motion for a New Trial

The decision to grant a motion for new trial is committed to the sound discretion of the trial court, which may set aside the verdict and submit the issues to another jury if the court ascertains that the verdict constitutes a miscarriage of justice. Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36, 101 S.Ct. 188, 191 (1980); American Bearing Co. v. Litton Indus., 729 F.2d 943, 948 (3d Cir.) *cert. denied*, 469 U.S. 854, 105 S. Ct. 178 (1984). It is not sufficient that the court merely disagrees with the jury and would have reached a different decision on the

merits. Rather, the evidence must preponderate heavily against the verdict. Golden v. Parmi Tool

Co., 1992 WL 322067 (E.D. Pa.) *citing* Tibbs v. Florida, 457 U.S. 31, 38 n.11, 102 S.Ct. 2211,

2216 n. 11 (1982). The jury's verdict may be set aside only if manifest injustice will result if it

were allowed to stand. Schoeborn v. Boeing Company, 586 F. Supp. 711 (E.D. Pennsylvania,

1984).

### B.    The Court Did Not Err in Admitting the Testimony of Defense Liability Expert Walter Curran.

The opinions expressed by defense liability expert Walter Curran at trial were consistent

with the opinions set forth in his report, i.e., that the accident was caused by the negligence of

Dwight Jones in banging the turnbuckle with a wrench.  Mr. Curran's trial testimony went

further to rebut the **trial testimony** of Dwight Jones, which was more detailed than his

deposition testimony.  Therefore, the Court did not err in allowing Mr. Curran's testimony;

rather, it would have been error for the court to not admit this testimony, which fairly rebutted

the trial testimony of Mr. Jones.

Plaintiffs challenge the Court's decision to allow Mr. Curran to offer his opinion that it

would have been impossible for the lashing rod to have flown out of the turnbuckle the way Mr.

Jones described at trial.  Specifically, Mr. Curran testified:

> And if it was snugged put tight, as Mr. Jones said it was and – Mr.
> Jones, who I know is a big strong guy – you can hit that with just
> about anything you want and nothing is going to budge that.
>
> It will vibrate, but if it's in position, locked in and tightened,
> you can hit that all day long and there is nothing that's going to fly
> out or budge.

See Trial Testimony of Walter Curran (4/8/04), attached as Exhibit "B," p. 4.

Mr. Curran could not have offered this opinion in his expert report to a reasonable degree of professional certainty because Mr. Jones did not testify to the condition of the lashing gear at his deposition. At his deposition, Mr. Jones testified that he was mainly concerned with making sure he was unlashing the right container, as opposed to observing the condition of the lashing gear to see if all of the components were seated properly:

> Q.     When you looked up at the container, did you see any problems with the way the lashing rods were?  You said you looked up to see that you had the right container.
>
> A.     Yeah.
>
> Q.     Did you see any problems?
>
> A.     I didn't see any problems, but again, I'm not – you know, I'm not looking for that.  I'm just looking for my numbers to make sure that I've got the right container.

See Dep. of Dwight Jones, attached as Exhibit "C," p. 25.  This testimony was not sufficient to enable Mr. Curran to conclude in his expert report that it would have been impossible for the accident to have occurred as Mr. Jones described.

Mr. Jones' trial testimony, however, provided a more detailed description of the lashing gear assembly and enabled Mr. Curran to draw conclusions that he was not able to draw from Mr. Jones' deposition testimony.  At trial, Jones testified that the lashing rod appeared to be seated properly in the container before he struck the turnbuckle with the wrench.  See Trial Testimony of Dwight Jones (4/5/04), attached as Exhibit "D," p. 33, ln. 7 ("It appeared to be in from where I could see"); Trial Testimony of Dwight Jones (4/6/04), attached as Exhibit "E," p. 26, lns. 8-10 ("…when I say that it appears to be seated, that means it appears to be inside that corner casting.  When I say it – it appears to be seated, that's what I mean").  Mr. Jones also testified that the lashing rod appeared to be properly seated in the turnbuckle before he struck the

turnbuckle with the wrench. <u>See</u> Exhibit "C," p. 40, ln. 9 ("It looked fine inside of the turnbuckle").

This trial testimony was far more specific than Mr. Jones' deposition testimony. Whereas Mr. Jones testified at his deposition that he "didn't see any problems" with the lashing gear, he described the lashing gear assembly in much greater detail at trial, testifying that the lashing rod appeared to be seated properly in both the container and the turnbuckle. This more detailed testimony enabled Mr. Curran to reach an expert opinion regarding the possibility of Mr. Jones' version of the events that he was not able to draw based upon Mr. Jones' deposition testimony.

Further, plaintiffs had their own liability expert, Captain Joseph Ahlstrom, who could have been called for rebuttal to dispute Walter Curran's testimony as to the impossibility of the lashing rod coming free if it was secured in place as plaintiffs and Jones alleged.

Plaintiffs' remaining challenges to Mr. Curran's testimony – that his opinion was based upon a different turnbuckle than the one in evidence and that his opinion was based upon two photographs not present in the courtroom – are unfounded. Defense counsel specifically asked Mr. Curran to base his opinion upon the assumption that the turnbuckle was of the configuration shown in two photographs that were marked as plaintiffs' exhibits (P-6A and P-6B). <u>See</u> Exhibit "B," p. 2. Therefore, it was made clear to the jury that Mr. Curran's opinions were based upon the same type of turnbuckle configuration as the one that was allegedly involved in plaintiffs' accident. Further, to any extent that Mr. Curran referred to a different turnbuckle configuration than the one allegedly involved in plaintiffs' accident, plaintiffs' counsel had a full and fair opportunity to make that point in his cross-examination of Mr. Curran. Thus, plaintiffs' argument goes to the weight of the evidence, not the admissibility of testimony.

**C.    The Court Did Not Err in Charging the Jury on Superceding Cause and, Alternatively, any Error Was Harmless          .**

Although the LHWCA, and the cases interpreting it, generally define the duties owed by a ship owner to a longshoreman, it is entirely appropriate for the Court to turn to the federal common law for guidance on other aspects of tort law.  In <u>Texas Indus., Inc. v. Radcliff Materials, Inc.</u>, 451 U.S. 630 (1981) the United States Supreme Court explained the limited role of federal common law as follows:

> There is of course "no federal general common law." Nevertheless, the [Supreme] Court "has recognized the need and authority in some limited areas to formulate what has come to be known as "federal common law." These instances are "few and restricted" and fall into essentially two categories: those in which a federal rule of decision is "necessary to protect uniquely federal interests," and those in which Congress has given the courts the power to develop substantive law." <u>Id.</u>

> ...absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and **admiralty cases.**  In these instances, our federal system does not permit the controversy to be resolved under state law, either because the authority and duties of the United States as sovereign are intimately involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control.

451 U.S. at 640-41 (citations omitted).

In admiralty cases, federal courts, including those in this Circuit, rely upon the Restatement (Second) of Torts as an accurate statement of federal common law tort principles. In <u>Hurst v. Triad Shipping Co.</u>, 554 F.2d 1237 (3rd Cir. 1977), the United States Court of Appeals for the Third Circuit explained:

> In seeking simultaneously to apply land-based negligence standards and to maintain the national uniformity mandated by

> Congress, admiralty courts applying amended section 905(b)
> generally have turned to the Restatement (Second) of Torts as the
> national expression of non-maritime tort principles.

554 F.2d at 1248.

Defendants have consistently maintained that they were not negligent because they breached no duty under the LHWCA. In their Answers, defendants asserted that, if plaintiffs sustained damages as alleged, the damages were a result of the negligence of the expert stevedore. See Defendants' Answers, attached as Exhibits "G" and "H" (Ninth Affirmative Defense). Further, at trial, defendants pursued this same defense; defendants argued that, even if the jury were to find that the defendants were negligent, the jury should find that the negligence of Dwight Jones superceded their negligence so that defendant could not be found liable. According to the Restatement:

> A superseding cause is an act of a third person or other force
> which by its intervention prevents the actor from being liable
> for harm to another which his antecedent negligence is a
> substantial factor in bringing about.

Restatement (Second) of Torts, §440. Thus, if an act of Dwight Jones was a superseding cause, the defendants would not be liable for any negligent act or omission that occurred before Jones' act, **even if an act or omission of the defendants was a substantial factor in bringing about the plaintiffs' damages**.

Moreover, even if charging the jury on superceding cause were error, it was **harmless error**. The jury did not reach the issue of superceding cause because the jury found that there was no negligence on the part of the vessel. See Exhibit "A." Having found neither defendant negligent, the jury had no occasion to consider whether the negligence of the defendants was superceded by the negligence of another actor, such as Dwight Jones. Therefore, the Court's

instruction on superceding cause did not affect the verdict.  Even if the Court did err in its

instruction, which defendants deny, any such error was harmless.

**D.      The Court Did Not Err by Not Instructing the Jury on *Res Ipsa Loquitur*.**

Plaintiffs also contend that the court erred in failing to instruct the jury on the doctrine

*res ipsa loquitur*.  That doctrine is used under certain circumstances to impose liability for

unexplained accidents.  According to the Restatement (Second) of Torts:

> (1) It may be inferred that harm suffered by the plaintiff is caused
> by negligence of the defendant when
>
>   (a) the event is of a kind which ordinarily does not occur in the
> absence of negligence;
>
>   (b) other responsible causes, including the conduct of the plaintiff
> and third persons, are sufficiently eliminated by the evidence; and
>
>   (c) the indicated negligence is within the scope of the defendant's
> duty to the plaintiff.
>
> (2) It is the function of the court to determine whether the
> inference may reasonably be drawn by the jury, or whether it must
> necessarily be drawn.
>
> (3) It is the function of the jury to determine whether the inference
> is to be drawn in any case where different conclusions may
> reasonably be reached.

Restatement (Second) of Torts §328D.

The Court correctly decided that the doctrine *res ipsa loquitur* was not applicable to this

case.  First, plaintiffs failed to satisfy the first element of §328D, expressed in part (1)(a), that the

alleged accident was the kind of event which ordinarily does not occur in the absence of

negligence.  Plaintiffs not only failed to present any such testimony but their own expert opined

during trial that the most likely cause of the lashing rod coming free and striking the plaintiff was the failure of the metal screw on the turnbuckle due in part to salt water rusting.

Second, Dwight Jones' trial testimony precluded plaintiffs from satisfying the second element, stated in part (1)(b). As his trial testimony established, the actions of Dwight Jones could very well have been the cause of the accident absent any negligence on the part of the vessel. In fact, given Jones' testimony, it would have been reversible error for the Court to give a *res ipsa loquitur* instruction as it would have alleviated plaintiffs' burden of proving that the vessel breached its duty of care. Therefore, the Court properly determined that the jury could not reasonably draw an inference of negligence absent direct proof under the facts of this case, and it was not error to decide against giving the instruction requested by plaintiffs.

## E.      The Court Did Not Err in Charging the Jury on "Open and Obvious" Conditions.

The Court's instruction on the "turnover duty," including the vessel's duty with respect to an open and obvious hazard, was an accurate statement of the law. In Kirsch v. Plovidba, the case on which plaintiffs rely in their brief, the United States Court of Appeals for the Third Circuit explained the turnover duty in the case of open and obvious hazards as follows:

> [T]here may be cases where the shipowner cannot reasonably expect that a stevedore (and its employees) will avoid an obvious hazard even when practical to do so. The Court in Scindia suggested that positive law, custom and contract may supplement a shipowner's duties to longshore workers. If, for example, a regulation required shipowners and only shipowners to rectify a specific type of obvious hazard, a shipowner may not reasonably expect a stevedore and its employees to do so. Depending on other regulations or on a custom between the shipowner and the stevedore or within the port or industry, however, the shipowner might still reasonably expect that, upon discovering an obvious hazard, the stevedore would inform the ship's crew so that the crew could rectify the situation.

> On the other hand, **customary practice may suggest that a shipowner should know that longshore workers frequently confront rather than avoid a type of obvious hazard. If so, the ship owner may be negligent in not eliminating the hazard, although the plaintiff's recovery may be reduced according to his or her comparative fault**.

> We therefore conclude that a shipowner may be negligent for failing to eliminate an obvious hazard that it could have eliminated, but only when it should have expected that an expert stevedore could not or would not avoid the hazard and conduct cargo operations reasonably safely.

971, F.2d 1026, 1030-31 (3d Cir. 1992) (emphasis added).

The Court's instruction on this point is practically verbatim:

> As I mentioned above, the Defendants are not liable if the danger that caused Plaintiff Hill's injury would have been obvious to a reasonably competent stevedore. However, there is an exception to this rule. The Defendants may be liable for an obvious hazard because **custom, positive law or contract instructs the shipowner to rectify the particular hazard, regardless of its obviousness. For example, where a shipowner should know that longshore workers frequently confront rather than avoid a type of hazard, the shipowner may be negligent in not eliminating the hazard, although the Plaintiff's recovery may be reduced according to his or her comparative fault**.

See Jury Instructions attached as Exhibit "F" (No. 19) (emphasis added).  Contrary to plaintiffs' claim, this instruction hardly "left [the jury] to consider only the Court's introductory expression that a shipowner is not liable for the consequences of an open and obvious condition." Plaintiff's Brief at 11.  Rather, the Court took great care to explain this important exception consistently with the Court of Appeal's opinion in Kirsch.

Moreover, Court's willingness to give this instruction was especially fair in light of the fact that plaintiffs offered absolutely no proof that the defendants knew or should have known that longshore workers routinely strike frozen turnbuckles with a wrench. Although Dwight

Jones testified that this is a common practice among longshoremen, it does not necessarily follow that the vessel owner should have been aware of the practice. As the "turnover duty" itself demonstrates, the vessel is ordinarily not involved in cargo operations and it cannot be assumed that the vessel should be aware of all of the practices of longshoremen.

**III.    CONCLUSION**

      For the foregoing reasons, defendants respectfully request that this Honorable Court to enter an Order in the form attached hereto, denying plaintiffs' Motion for a New Trial.

      Respectfully submitted,

      RAWLE & HENDERSON, LLP

By: _____

      Carl D. Buchholz, III, Esquire
      Attorney for Defendants,
      Schiffahrtsgesellschaft MS Priwall
      mbH & Co. KG and Reederei F.
      Laeisz G.m.b.h., Rostock
      The Widener Building
      One South Penn Square
      Philadelphia, PA  19107
DATED:  October 1, 2004      Phone: (215) 575-4200.

## CERTIFICATE OF SERVICE

I, Carl D. Buchholz, III, Esquire, do hereby certify that a copy of the foregoing Brief in Opposition to Plaintiffs' Motion to New Trial has been sent via United States First Class Mail, postage pre-paid to the following of record:

> Alfred Smith, Esquire
> Alfred Smith & Associates
> 1333 Race Street, 2nd Floor
> Philadelphia, PA 19107
> **Attorneys for Plaintiffs**

_____
Carl D. Buchholz, III, Esquire

Dated:  October 1, 2004