IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORNELIUS HILL, et al. | : | CIVIL ACTION |
| | : | |
| V. | : | |
| | : | |
| NSB NIEDERELBE | : | 02-2713 |
| SCHIFFAHRTSGES.MBH & CO., et al. | : | |

MEMORANDUM

**Baylson, J.**                                                                                           October 27, 2004

Plaintiffs Cornelius and Trudie Hastings Hill filed a complaint on May 7, 2002 seeking recovery under the 1972 Amendments to the Longshoremen's and Harbor Worker's Compensation Act ("LHWCA"), 33 U.S.C. § 905(b), for injuries suffered by Cornelius Hill in the course of his employment as a longshoreman. This Court denied Defendants' Motion for Summary Judgment on December 30, 2003 in an opinion that lays out the factual background of this case. Hill v. NSB Niederelbe Schiffahrtsges.MHB & Co., 2003 U.S. Dist. LEXIS 23723 (E.D. Pa., 2003). A jury trial was held April 5 to April 8, 2004, resulting in a verdict for the Defendants. On April 9, 2004, this Court entered judgment against Plaintiffs and for Defendants. On April 15, 2004, Plaintiffs filed a Motion for New Trial. This Court ordered a brief in support of the motion and, after several extensions, Plaintiffs filed a brief in support of the Motion for New Trial on September 3, 2004. Defendants filed a response and Plaintiffs have filed a reply brief. For the reasons stated below, Plaintiffs' Motion for New Trial will be denied.

I.      **Legal Standard**

In considering a motion for a new trial, a court must refrain from interfering with the jury's verdict unless it is clear that "the jury has reached a seriously erroneous result.'" Lind v.

Schenley Indus., Inc., 278 F.2d 79, 89 (3d Cir. 1960) (en banc) (quoting 6 Moore's Federal Practice 3819 (2d ed.)), cert. denied, 364 U.S. 835, 81 S. Ct. 58, 5 L. Ed. 2d 60 (1960). The Federal Rules of Civil Procedure do not delineate the specific grounds upon which a new trial may be granted, referring, rather, to the reasons existing under the common law:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted inactions at law in the courts of the United States . . .

Fed. R. Civ. P. 59(a). See generally 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2805 (2001). The court has broad discretion in deciding a motion for a new trial when the proffered ground is legal error. Klein v. Hollings, 992 F.2d 1285, 1289-90 (3d Cir. 1993). Such discretion is narrowed when the claim is that the verdict is against the weight of the evidence, for in that situation, the court is substituting its own judgment on the facts for that of the jury. Id. at 1290; Lind, 278 F.2d at 90. The court's inquiry in evaluating a motion for a new trial on the basis of trial error is twofold. It must first determine whether an error was made in the course of the trial, and then must determine "whether that error was so prejudicial that refusal to grant a new trial would be 'inconsistent with substantial justice.'" Bhaya v. Westinghouse Elec. Corp., 709 F. Supp. 600, 601 (E.D. Pa. 1989), aff'd, 922 F.2d 184 (3d Cir. 1990).

## II.    Parties' Contentions

In their original Motion for a New Trial, Plaintiffs stated nine grounds for relief: (1) the verdict was against the law, (2) the verdict was against the evidence, (3) the verdict was against the law and the evidence, (4) the trial court erred in refusing to permit plaintiffs' expert to give opinion testimony based on the facts of the accident, (5) the trial court erred in striking the

opinions of plaintiffs' expert rendered on cross-examination when there were no objections thereto and no motions to strike were made, (6) the trial court erred in permitting defendant's expert to give opinion testimony which was not in his report issued prior to trial, (7) the trial court erred in charging the jury on superseding cause, (8) the trial court failed to charge the jury on res ipsa loquitur, and (9) the trial court failed to instruct the jury that an open and obvious condition requires the stevedore only to take practical measures to avoid or eliminate the hazard.

In the brief filed in support of this Motion, Plaintiffs only discuss the last four items, above. As the Plaintiffs provide no argument in support of the other items, and the Court's own review finds no reasons to support a new trial based on these allegations, the Court will deny a motion for a new trial on the grounds listed in the first five items, above.

In their supporting brief, Plaintiffs argue that defense expert Walter Curran was improperly allowed to testify to his opinion that it would have been impossible for the lashing to come loose, and that this opinion was not in Curran's report and, therefore, a violation of Fed. R. Civ. P. 26(a)(2)(B). Plaintiffs further argue that the jury charge on superseding cause was not applicable to LHWCA cases and confused the jury. In addition, Plaintiffs argue that the Court's failure to give the jury a charge regarding res ipsa loquitur was error because such a charge is consistent with LHWCA cases. Finally, Plaintiffs argue that the jury charge regarding open and obvious conditions was incomplete and prejudicial because it did not include the instruction that a stevedore take only practical measures to avoid the hazard.

In their response, Defendants contend that the disputed testimony of defense liability expert Walter Curran was within the scope of his report. Defendants also contend that there was no error in the charge on superceding cause, and even if there were, it was harmless error; that

the Court did not err by refusing to instruct the jury on res ipsa loquitur, and there was no error in charging the jury on "open and obvious" conditions.

## III. Legal Discussion

### A. Testimony of Walter Curran

Plaintiffs' first contention is that defense expert Curran unfairly testified as to opinions that were not included in his expert report in violation of Fed. R. Civ. P. 26(a)(2)(B). Plaintiffs argue that, because of this surprise, Plaintiffs' counsel could not effectively cross examine Curran and Plaintiffs were thus prejudiced because Curran was the essential defense witness. A review of the transcript of Curran's testimony reveals that Curran did testify that it was physically impossible for the lashing rod to come out of the turnbuckle and off the container, as Plaintiffs' witness Dwight Jones testified. Tr. 4/8/04 at 3. Plaintiffs' counsel objected to this testimony on the grounds of surprise, and was overruled by this Court. Tr. 4/8/04 at 4.

Defendants give as the reason this opinion is not in the report that Mr. Jones did not testify at his deposition as to the condition of the lashing gear, but that he was mainly concerned making sure he was unlashing the correct container, as opposed to observing the condition of the lashing gear to see if all of the components were seated properly. Thus, there was no reason to give an opinion as to impossibility in the report. Defendants contend that at trial Mr. Jones provided a more detailed description of the lashing gear assembly, which enabled Mr. Curran to draw conclusions and state opinions at trial that he was not able to draw from Mr. Jones' deposition testimony, and thus, it was proper for the Court to allow Mr. Curran to rebut the trial testimony even if that opinion was not specifically within his report, as there was no reason to put it in the report, in view of the deposition testimony.

On cross examination, Plaintiffs' counsel questioned Curran about whether his opinion concerning impossibility was in his expert report, and Curran testified that "my testimony here today does not go beyond the bounds of this report in any way, shape or manner as far as I'm concerned. It simply fills in the details when asked." Tr. 4/8/04 at 19.

An examination of Curran's expert report, Exhibit 1 to Plaintiffs' Brief in Support of Motion for New Trial, shows that Curran does not specifically say that the accident as described by Jones was impossible, but does discuss his opinion as to how the turnbuckle and lashing should be maintained, how they are designed, and what should have been done assuming the turnbuckle was frozen, whether the actions of Jones caused the injury, and whether the turnbuckles were properly maintained. Curran's testimony at trial that the accident as described by Jones was impossible was part of detailed testimony regarding the maintenance of the turnbuckles, whether the turnbuckle was frozen, what Jones should have done if the turnbuckle was frozen, and how the act of Jones hitting the turnbuckle would have affected a frozen turnbuckle. Tr. 4/8/05 at 3-7. All of this testimony is consistent with and within the scope of Curran's expert report.

Further, Plaintiffs' counsel conducted extensive cross examination of Curran, taking up 33 pages of the transcript compared to 31 pages of direct examination, including a discussion of different turnbuckle configurations, an issue discussed with more than one expert at trial. Plaintiff's counsel questioned the basis for Curran's opinion, discussed and challenged his theory regarding the mechanism of the turnbuckle, and questioned his conclusions regarding the actions of Jones. Thus, Plaintiffs' contention that his cross examination of Curran was ineffective due to the surprise of Curran's testimony rings hollow. The Court finds that Curran's testimony was

generally within the scope of his expert report, and it is not possible or expected that an expert will anticipate every bit of testimony that a plaintiff may present at trial. Particularly in this case where the testimony of Mr. Jones was more extensive at trial than at his deposition, the Court acted within its discretion in allowing Curran to give expert testimony to rebut the trial testimony, even though the specific point was not mentioned in the expert report. Plaintiffs do not cite, and the Court is not aware of, any bright line rule that every opinion by an expert must be preliminarily stated in the report, or forever be precluded. Rather, the issue is whether the plaintiff was prejudiced by unfair surprise, and in view of the overall record, the Court finds that there was no undue prejudice. Curran's testimony was consistent with his expert report and Plaintiffs' cross examination was thorough and certainly not ineffective.

### B. Superseding Cause Instruction

Plaintiffs' next argument in support of a new trial is that this Court's charge to the jury regarding superseding cause was inconsistent with LHWCA cases, confused the jury, and led to an unfavorable and unfair verdict for Plaintiffs. As the Court stated in response to Plaintiffs' arguments at the charge conference, Plaintiffs misconstrue the relationship between intervening and superseding cause, as well as the relevant case law.

According to the Restatement:

> A superceding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.

Restatement (Second) of Torts, § 440. Thus, if an act of Dwight Jones was a superseding cause, the defendants would not be liable for any negligent act or omission that occurred before Jones'

act, even if an act or omission of the defendants was a substantial factor in bringing about the plaintiffs' damages.

Thus, in this case, the action of Jones hitting the turnbuckle could have been a superseding cause if it was so extraordinary and unexpected as to make any prior action regarding the turnbuckle no longer a proximate cause of the accident.  When this is the case, any prior action incurs no liability unless "the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.  M.B. v. Women's Christian Alliance, 2003 U.S. Dist. LEXIS 10104, 16 (E.D. Pa. 2003).

The Court's instruction to the jury on superseding cause is consistent with the Restatement.  See Restatement (Second) of Torts § 440 (defining superseding cause as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which by its antecedent negligence is a substantial factor in bringing about."). Third Circuit case law supports giving an instruction on superseding cause in LHWCA cases. See DiRago v. American Export Lines, Inc., 636 F.2d 860 (3d. Cir. 1981) (noting that instruction on superseding cause is justified in LHWCA cases when the evidence supports it).  In addition, a district court's decision to place the issue of superseding cause before a jury has been found to not be reversible error.  Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 495 (3d Cir. 1985).  The Court also notes that the charge given to the jury did include the instruction that a superseding cause must be "highly extraordinary."  Tr. 4/8/04 at 28.  See Wilson v. American Chain & Cable Co., 364 F.2d 558, 561-62 (3d Cir. 1966) (holding that it was error to submit a claim to the jury without instruction that a superseding cause must be extraordinary).  Thus,

Plaintiffs' argument that the Court's instruction on superseding cause was in error and confused the jury is not meritorious. In addition, because the jury found that neither Defendant was negligent, the jury did not reach the issue of superceding cause and thus any error defining this concept was harmless error.

### C.    Lack of Res Ipsa Loquitur Instruction

Plaintiffs next contend that this Court erred in denying Plaintiffs' request to charge the jury on res ipsa loquitur. At the pretrial conference on March 5, 2004, Plaintiffs' counsel raised the issue of a charge on res ipsa loquitur and the Court requested that Plaintiffs provide some authority for such an instruction in a LHWCA case. Tr. 3/5/04 at 19-20. In addition, during the testimony of Plaintiffs' expert Joseph Ahlstrom, the Court ruled that the Plaintiff could not proceed on the theory of res ipsa loquitur in questioning this witness because he could provide no authority for proceeding on such a theory under the LHWCA. This Court stated

> I'm not going to allow the plaintiff to proceed on the theory of res ipsa loquitur . . . And my reason for that in brief is because the Supreme Court has developed in several cases that have all been briefed on the summary judgment motion, a very careful allocation of responsibility here between the various parties involved in unloading a ship under the Longshoremen's Act. And it does not include - those cases do not include - any discussion whatsoever of res ipsa loquitur.

Tr. 4/6/04 at 70-71. As when this issue was argued at trial, Plaintiffs have presented no authority for res ipsa loquitur in LHWCA cases. Plaintiffs' brief cites the sample jury instruction in O'Malley, Grenig and Lee, Federal Jury Practice and Instructions (5th Ed. West 2001) § 156.252. This model instruction does exist, but the only authority cited for it is a case under the Jones Act from the Ninth Circuit, Olsen v. States Lines, 378 F.2d 217 (1967). In addition, all of the cases

cited by Plaintiffs are cases arising under different statutes, primarily the Jones Act, and Plaintiffs cite no case under the LHWCA. Accordingly, as at trial, Plaintiffs' argument that a res ipsa loquitur instruction is appropriate asks this Court to step outside the carefully drawn outlines of the LHWCA case law, and this Court is not willing to do so. Congress and the Supreme Court have developed the law surrounding the LHWCA in a way that specifically balances the liability and responsibility of various actors and nowhere in that case law does res ipsa loquitur apply. Therefore, it was not error for this Court to decline to instruct the jury on res ipsa loquitur.

### D. Lack of "Practical Measures" Instruction

Finally, Plaintiffs argue that the Court's instruction to the jury regarding open and obvious dangers was in error because it did not include an instruction that a stevedore need take only practical measures to avoid such dangers. Plaintiffs argue that Kirsch v. Plovidba, 971 F.2d 1026, 1033 (3d Cir. 1992), makes clear that an open and obvious condition does not mean that a shipowner is automatically free from liability and that this Court's instruction did not make that clear, thus confusing the jury and rendering an unfair verdict.

A "district court has substantial discretion with respect to specific wording of jury instructions and need not give [a] proposed instruction if essential points are covered by those that are already given." Grazier v. City of Philadelphia, 328 F.3d 120 (3d Cir. 2003). The instruction given to the jury regarding this issue was Jury Instruction No. 19 and read:

> As I mentioned above, the Defendants are not liable if the danger that caused Plaintiff Hill's injury would have been obvious to a reasonably competent stevedore. However, there is an exception to this rule. The Defendants may be liable for an obvious hazard because custom, positive law or contract instructs the shipowner to rectify the particular hazard, regardless of its obviousness. For example, where a shipowner should know that longshore workers

>frequently confront rather than avoid a type of obvious hazard, the shipowner may be negligent in not eliminating the hazard. Although the Plaintiff's recovery may be reduced according to his or her comparative fault. I will instruct you about comparative fault later in these instructions.

Tr. 4/8/04 at 31. This instruction draws directly on Kirsch. As discussed in this Court's December 30, 2003 opinion on summary judgment, Kirsch instructs that a shipowner may be negligent for an obvious hazard "because custom, positive law or contract instructs the shipowner to rectify the particular hazard, regardless of its obviousness." Kirsch, 971 F.2d at 1031. The case further provides that, where "a shipowner should know that longshore workers frequently confront rather than avoid a type of obvious hazard . . . the shipowner may be negligent in not eliminating the hazard, although the plaintiff's recovery may be reduced according to his or her comparative fault." Id. Plaintiffs' contention that this Court overlooked Kirsch in giving its instruction regarding the exception to the open and obvious condition rule is simply incorrect. In addition, Plaintiffs' argument that the instruction would have led the jury to believe that an open and obvious condition automatically relieves the shipowner of liability is plainly contrary to the language of the instruction. Thus, Plaintiffs' argument as to this jury instruction fails, as there was no error in the instruction.

**IV.    Conclusion**

For the reasons discussed above, this Court finds that no legal error was committed by this Court in allowing the testimony of defense expert Curran, in charging the jury on superseding cause, in declining to charge the jury on res ipsa loquitur, and in the language of the jury charge on open and obvious conditions. Accordingly, Plaintiffs' Motion for a New Trial will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORNELIUS HILL, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NSB NIEDERELBE | : | 02-2713 |
| SCHIFFAHRTSGES.MBH & CO., et al. | : | |

**<u>ORDER</u>**

And now, this 27th day of October, 2004, it is hereby ORDERED that Plaintiffs' Motion for a New Trial (Doc. No. 110) is DENIED.

BY THE COURT:

_____
Michael M. Baylson, U.S.D.J.

O:\CIVIL\02-2713 Hill v. NSB\02-2713 Hill v NSB, Opinion P's M for New Trial.wpd